Irving Graifman and Thomas Jennings, d/b/a Thomas Construction Company, Plaintiffs-Appellees, v. The Village of Skokie, a Municipal Corporation, Defendant-Appellant.

Gen. No. 50,783.

First District, First Division.

April 25, 1966.

Rehearing denied May 9, 1966.

Harvey Schwartz, Corporation Counsel, of Skokie (Morton C. Kaplan, Assistant Corporation Counsel, of counsel), for appellant.

Goldberg & Levin, of Chicago (Mayer Goldberg and Burton Berger, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a zoning case. The defendant Village appeals from a chancery order which granted permission to plaintiffs to construct a multiple dwelling on vacant lots zoned for single-family dwellings and directed defendant to issue the necessary permits.

The subject site is zoned R–2, Single Family Residential. Plaintiffs seek to rezone the site to R–4, Multiple Dwelling, so as to erect on it a 17–unit apartment building, consisting of ten 1–bedroom and seven 2–bedroom apartments.

The subject property consists of four vacant lots at the southeast corner of Niles Center Road and Davis Street in the Village of Skokie. The address is 9057–67 Niles Center Road, a secondary arterial thoroughfare. The tract is irregular, with an 108 foot frontage on Niles

Center Road, a depth of 125 feet on the south, and a frontage of 100 feet on Davis Street on the north. It contains approximately 16,000 square feet and has a grade change of from 8 to 10 feet to an alley on the east.

The entire block immediately to the south is zoned for single-family residential and so developed. The blocks immediately to the west and north of the subject property are improved with multiple dwellings. The blocks to the east, with the exception of the immediate block, are zoned for single-family dwellings.

Plaintiffs' complaint in chancery alleged the ordinances of the Village of Skokie prevented the "highest and best use" of the subject land and deprived plaintiffs of its "highest and best economic use," and that the ordinances "have no reasonable or substantial relationship to the public health, safety, comfort, or welfare and are a cloud upon the plaintiffs' title and destructive of the value of the property . . . ." Plaintiffs prayed that the zoning ordinances "be declared null and void" and removed as a cloud on plaintiffs' title to the subject property. Plaintiffs additionally sought a permanent injunction restraining the Village from enforcing the ordinances.

The matter was referred to a master in chancery, and the record contains a report of the proceedings before the master. The master found "that the highest and best use of the property in question would be for multiple apartment development," and that such development "would not in any degree be contrary to the public welfare" and "would not adversely affect the property owned by the objectors, who appeared before the Master, to any appreciable extent." The master further found that plaintiffs had "overcome the presumption of validity of the zoning ordinance and have proved by clear and convincing evidence that the zoning restriction is invalid in its application to the subject property," and recommended that a decree be entered in accordance with the prayer of plaintiffs' complaint.

161

The decree overruled objections to the master's report and adopted the findings. The decree granted plaintiffs "the right and permission" to use the subject property "to its highest and best use by improving said vacant property with seventeen (17) apartments, all in accordance with the applicable multiple zoning requirements of the Village of Skokie," and directed the Village to issue the necessary construction permits. The decree also taxed the master's fees and charges against the defendant, and the court retained jurisdiction for the purpose of enforcing the decree. The decree further found that "there is no just reason for delaying enforcement of or appeal from this Decree."

Plaintiffs' witnesses consisted of the two plaintiffs, a planning and zoning consultant (George H. Kranenberg), and a real estate broker (Ben Friend). Plaintiffs, in the business of constructing and selling family dwellings, purchased the subject property in August or September of 1963 and paid $19,000 for it. They knew it was zoned for single-family use and intended to build three single-family homes on it. They had plans drawn and, after receiving bids which indicated "a cost of twenty-five thousand dollars per house without including the price of the land," it was decided that the cost of each house would be more than the value of the houses on the rest of the block, and "that multiple would be a better thing."

Plaintiffs' witness George H. Kranenberg testified that in his opinion "the highest and best use from a planning and zoning standpoint of the subject site is for multiple family dwellings." He further testified, "In the immediate area of the subject site on Niles Center Road and in all directions except to the south the property is zoned for multiple family and so improved. . . . These uses are all uniform and established as they relate to the subject site so on all sides we have apartment zoning, apartment use which is the use that is uniform and established in this location, the only exception is the property directly

to the south of the subject site and extending for two blocks south thereof. . . . Also the subject property has been vacant and has never been developed while the other property in the area is developed. For all of these reasons, it is my opinion that the property is best suited and best developed for multiple-family dwellings. Niles Center Road is one of the principal thru streets north and south street in the Village of Skokie. The residences that have been erected south of this property on Niles Center Road are not a proper use for this area."

On cross-examination, he stated, "I see nothing wrong with having two different zoning districts in the same block. . . . The predominant character for the subject property is reflected from the northeast and west rather than from the south."

Plaintiffs' witness Ben Friend, a real estate broker, who had represented owners of some of the single-family residences in the subject block to the south, testified that "in the general area on Niles Center Road approximately seventy-five to eighty per cent of the area is multiple dwellings." In his opinion "the value of the subject property for multiple dwelling purposes would be between thirty-four to forty thousand dollars. . . . I would say that the property would not depreciate any single family dwelling residences in the area because of the multiple dwelling across the street, the multiple dwelling on each corner, also multiple dwelling east of there and I believe that the proposed development would enhance the valuation of the property in the neighborhood."

Defendant's witnesses were a city planning expert (Rolf C. Campbell), a real estate broker and appraiser (Roy Gottlieb), a Village traffic engineer, and two objectors (local home owners).

Defendant's witness Rolf C. Campbell testified that in his opinion the highest and best use for the subject property would be for residential purposes. "Concerning the best residential use for development for the sub-

ject site there are a number of uses residential in character to which the property could be put. One of the classifications is that for which it is presently zoned and the other classification is that for which the petitioner is asking for a rezoning. In all fairness and honesty both uses could be put to use on this particular parcel of land. I think it could support and could have an apartment on it. It also has equal merit for a use as a single family home and between the two uses I think it could be logically used for a two family home. . . . From a planning and zoning point of view it would be proper to develop the site for single family homes."

On cross-examination, he stated, "The adjacent apartments as referred to have a bearing on the subject property but I do not feel that they require that this property be used for apartments. I think that a single family use would be compatible with this just as the other parcels that are already developed with single family homes adjacent to this piece and are contiguous to it and are sold and are being lived in. . . . I would say that the single family zoning amounts to 10% in the stretch of Niles Center Road as indicated. In determining the highest and best use of the subject property it is not necessary to determine the comprehensive planning of the Village of Skokie because we are at a point where the property or the area immediately adjacent or around it is 95% developed. . . . I do not believe that the two blocks of single family residences is an intrusion on the apartments on Niles Center Road and the business area. In fact, with those single family uses already there fully developed and with people living there the people have a right to the protection to see that the adjacent area is held that way. . . . In my opinion I do not believe that whether the land has been laying dormant for years has any bearing on the highest and best use. . . . Skokie Blvd. and Niles Center Road are the two major streets

in the village of Skokie which are zoned and developed for multiple dwellings."

Defendant's witness Roy Gottlieb, a real estate broker and appraiser, who had acted as broker "for approximately 20 different scattered lots in the vicinity of Skokie in the last six or seven years," testified, "It is my opinion that the subject site is readily suitable for the building of three single family houses thereon. . . . Skokie has been built up considerably over the last ten years and there are not nearly the number of remaining lots in Skokie as there are in further out communities. As a result of this lots available for single family building construction demand a premium. . . . Niles Center Road is a thoroughfare in Skokie but it is not a primary thoroughfare in the sense that Skokie Highway is. It is a 30 m. p. h. road which is comparable to interior streets. . . . The value of the subject site for R–2 single family purposes as of today would be nineteen thousand five hundred dollars. . . . I believe that if these lots were given to me as a broker to sell for a reasonable selling period of sixty to ninety days I would be able to get a cash purchaser for nineteen thousand five hundred. Further, I believe that the single family houses along this street are somewhere in the twenty-two to twenty-five thousand dollar price range and I believe that houses in this bracket could be built and marketed at a profit to builders . . . . My opinion of the value of the subject site if rezoned for the proposed multiple use would have a value of approximately forty thousand dollars . . . ."

Concerning any depreciating effect to the single-family residences to the south, Gottlieb said, "The contrast between the two the bulk of the building adjoining the first single family house would have a depreciating effect of approximately 10% on the value of that house as opposed to the value of other adjoining houses further on along Niles Center Road. . . . If the subject property

were rezoned for R–4 multiple purposes in my opinion this will be a start of a trend for the development of the vacant property directly to the east for the same purposes, . . . . My opinion as to the highest and best use of the subject site is for development for three single family residential sites. . . . This particular block in total has been zoned and developed with the exception of one or two vacant sites and the subject property for the zoned purposes."

On cross-examination, he testified, "If the subject site were rezoned I do not think that it would have any depreciating effect to any of the houses on the block of Niles Center Road except the one next to it. It would not have any depreciating effect on any of the houses on the street immediately to the east of Niles Center Road. . . . My general experience with people looking for houses, is that they did not want to buy right next door to an apartment building and I would sell them other houses unless the price were low enough I found that abutting an apartment building was the worst possible influence and across the street would not be desirable but not as objectionable and backing up to an apartment building in many cases had no effect."

Defendant's witness Paul C. Box, a traffic engineer for defendant, testified that there was a problem of rather severe parking congestion along Niles Center Road in this area, and if the development were constructed an added traffic volume could be expected. On cross-examination, he said, "I would say that Niles Center Rd. is already a congested area. From a traffic and planning viewpoint multiple is more compatible than single family along a major traffic route. When we have a secondary artery such as Niles Center Rd. we find a mixture of both."

Defendant's witness George Towbin testified that he lived at 9055 Niles Center Road. "I have lived there approximately 8 years. My house directly abuts the subject

166

property. . . . When we purchased our home we checked the zoning and found that the whole block in which we were located was zoned residential. I am against the proposed apartment development for the subject site. My reasons are that it would reduce the value of our home I would say to a considerable sum."

Defendant's witness Jack J. Rubin testified he lived at 9010 Knox (the north and south street immediately east of the subject block) for five and one-half years. His house is the second house from the corner on Knox, 350 feet from the subject site, and it cost $34,000. He said, "I am opposed to Plaintiffs' proposal to erect a 17 apartment structure on the subject site. My reasons for objecting to the proposed development are that I believe the proposed structure is contrary to the character of the entire block as a whole. The area on the entire block consists of homes, single family dwellings entirely, except for this piece of vacant and the vacant immediately adjoining it. There are constructed on the balance of this square block homes ranging in value from twenty-five to approximately sixty-five thousand dollars."

At the outset, we consider plaintiffs' motion to dismiss the appeal primarily based on plaintiffs' contention that "the failure of the defendant to set out objections to the master's report, which stand as exceptions to it, constitutes a fatal omission in the abstract, which precludes this court from considering factual questions presented by the defendant. McCook Window Co. v. Hardwood Door Corp., 52 Ill App2d 278, 283."

The instant abstract, the pleading of the appealing party in a court of review, includes the master's report of his "findings of fact, conclusions of law and recommendations," and these were approved and adopted by the trial court. The contentions of the defendant are basically questions of law and are not directed at the "findings of fact" as such. Therefore, the abstract does

contain what is sought to be reviewed, and we find no merit to this contention.

■ Plaintiffs also complain of the failure of the defendant-appellant to observe the appeal procedure rules, and that "these glaring violations of the rules of court and of the fundamental principles of appeal should not remain unnoticed." In principle we agree with this statement but, as plaintiffs have not been prejudiced, we have accepted defendant's explanation. For the reasons stated, plaintiffs' motion to dismiss the appeal is denied.

In urging the affirmance of the decree, plaintiffs cite LaSalle Nat. Bank v. County of Cook, 12 Ill2d 40, 145 NE 2d 65 (1957), to show that the Supreme Court has set forth six principles applicable to each zoning case and asserts that "each and all of these principles when applied to the case at bar require affirmance of the decree appealed from." In that case, it is said (p 46):

> "A zoning ordinance is presumptively valid . . . , this presumption may be overcome only by clear and convincing evidence . . . , and the burden of proof is on the plaintiff. . . . .
>
> "Even though the validity of each zoning ordinance must be determined on its own facts and circumstances . . . yet an examination of numerous cases discloses that among the facts which may be taken into consideration in determining validity of an ordinance are the following: (1) The existing uses and zoning of nearby property, . . . (2) the extent to which property values are diminished by the particular zoning restrictions, . . . (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, . . . (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, . . . (5) the suitability of the subject property for the zoned purposes . . . ,

168

and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property.

" . . .

"No one factor is controlling. It is not the mere loss in value alone that is significant, but the fact that the public welfare does not require the restriction and resulting loss. When it is shown that no reasonable basis of public welfare requires the limitation or restriction and resulting loss, the ordinance fails and the presumption of validity is dissipated. . . . The law does not require that the subject property be totally unsuitable for the purpose classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare."

Plaintiffs also cite LaSalle Nat. Bank v. Village of Skokie, 26 Ill2d 143, 186 NE2d 46 (1962). While that case dealt with property located two blocks from the subject site and held that the property "takes its character from the trend of development along Niles Center Road," the court stressed many factors which are not present in the instant case.

Plaintiffs further contend that "where the equities are balanced and where the loss to plaintiffs does not cause public benefit then clearly the restrictions should be removed," and "the defendant's expert testified that there would be a depreciating effect of approximately ten per cent (10%) on the value of the home next adjacent to the subject property but that such depreciation would be confined to this one single family house."

Defendant argues that there exists in this case a fair difference of opinion as to whether the property should be classified single-family or multiple-family and, there-

169

fore, the question must be resolved in favor of the Village of Skokie.

■■ After examining the many cases cited by both sides, we believe the factual circumstances and pronouncements made in Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96 (1962), are pertinent here. In that case, the subject property consisted of three vacant lots in an R–2 residential district. The City refused to grant building permits to plaintiff, who sought to erect multiple dwellings. The lots across the street from plaintiff's block and the next block to the west were largely for commercial use, and the two blocks next west were largely devoted to apartment buildings. There, the court said (pp 272, 273):

> "The existing use in plaintiff's block is exclusively single-family dwellings, 24 in number, and conforms to the zoning classification. The suitability of her lots for the zoned purpose is attested by the fact that the entire remainder of the block has been fully developed with single-family residences, including the six adjoining recently built residences which front on Irving Park Road. The entire area to the north and west is similarly developed and zoned. While the narrow strips off the south side of the 3 blocks to the west are devoted to commercial and multiple-dwelling purposes, plaintiff's lots partake of the character of the block of which they are a part.
>
> . . . .
>
> ". . . It is evident that plaintiff's lots will be of somewhat greater value without the restrictions, but that is usually the case. . . . Defendant's witnesses, without attempting to fix a dollar loss, testified that neighboring property would be depreciated. Plaintiff seems to infer that, since enforcement of the restrictions diminishes her value, it is incumbent upon the city to show the extent by which the health,

safety, morals or general welfare is enhanced by maintaining the restriction. This overlooks the burden upon one questioning the validity of an ordinance.

"A presumption exists in favor of the validity of a zoning ordinance and the one who attacks such an ordinance has the burden of overcoming the presumption by proving with clear and convincing evidence that, as applied to him, it is arbitrary and unreasonable and is without substantial relation to the public health, morals, safety and welfare. . . . We are of the opinion that plaintiff has not met the burden."

■ In the instant case we, too, are of the opinion that plaintiffs have not met their burden with clear and convincing evidence. As said in Urann v. Village of Hinsdale, 30 Ill2d 170, 195 NE2d 643 (1964), at p 175:

"When all of the evidence is considered, it is our opinion that the plaintiffs' proof fails to overcome the presumption of validity but shows at best a situation where room exists for a difference of opinion concerning the reasonableness of the single-family residence classification, in which case the legislative judgment must be conclusive."

And on p 176:

"Other persons living in the single-family residence district involved have a right to rely upon the precept that the classification will not be changed within the district unless the change is required for the public good, . . . and there is credible evidence here that the use of plaintiffs' property for apartments will depreciate the value of nearby residences and create congestions the single-family residence classification was designed to prevent. Plaintiffs, on the other hand, purchased their lots, presumably at

171

residential prices, with a full awareness of their restricted zoning, . . . no changes have occurred in either the general character or existing uses in the neighborhood since plaintiffs acquired their lots, . . . and there is no showing that their property cannot be profitably developed on a single-family dwelling basis."

■ ■ In sum, and at the most, the evidence here demonstrates a difference in opinion as to the highest and best use of the subject property, and in that case the legislative judgment of the City Council must be conclusive. Although the other three corners at the subject site are improved with multiple family dwellings, the fact that the balance of this block has been improved with single family dwellings is indicative of the correctness of the zoning classification. We note, also, there is testimony in the record to indicate that plaintiffs could sell the subject property for approximately its cost to them. As said in Bennett v. City of Chicago, 24 Ill2d 270, 273, 181 NE2d 96 (1962), "Zoning must begin and end somewhere, and we have recognized that streets may form an appropriate boundary for zoning districts."

We conclude that plaintiffs have not sustained their burden of proof by clear and convincing evidence, and for the reasons given, the decree of the Circuit Court is reversed.

Reversed.

KLUCZYNSKI, P. J. and BURMAN, J., concur.