No brief for appellee.

LA SALLE NATIONAL BANK, Trustee, Plaintiff-Appellee, *v.* THE VILLAGE OF WESTERN SPRINGS, Defendant-Appellant.

(No. 59526; )

First District (2nd Division)—August 20, 1974.

534

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin, of counsel), for appellant.

Sidley & Austin, of Chicago (Thomas H. Morsch and Ronald V. Hirst, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

La Salle National Bank (hereinafter plaintiff) petitioned the board of zoning appeals of the Village of Western Springs, seeking to have certain unimproved property reclassified from R-2 Residential, which limited the use of the property to single-family dwellings, among other uses, to R-3 Residential, which would allow for the construction of two, two-family or "duplex" residences, one on each of the two lots which comprised the subject property. By a four-to-three vote, the board denied the petition, and, subsequently, the board of trustees of the Village approved the recommendation of the zoning board.

Thereafter, plaintiff filed suit in the court below, seeking a declaration that the R-2 Residential classification was arbitrary and discriminatory, and, hence, invalid and unconstitutional, as it applied to the subject property; further, plaintiff prayed that the Village be enjoined from interfering with such use of the subject property as would be permitted under the R-3 Residential classification. After having made its findings subsequent to a hearing on the matter, the court below entered an order holding the R-2 zoning of plaintiff's property to be "arbitrary and dis-

criminatory and, hence, invalid and unconstitutional as applied to plaintiff's proposed use" and further enjoined the Village from interfering with plaintiff's proposed use of the property "in full compliance with all requirements set forth for R-3 Residential Districts as defined by the Zoning Ordinance of the Village of Western Springs." The Village appeals.

The Village of Western Springs is located in suburban Cook County southwest of Chicago. The Burlington Northern Railroad tracks bisect the Village at a southwesterly-northeasterly angle.

In 1948, the zoning ordinance adopted by the Village provided for a staggered, R-3 zoning classification on the south side of Burlington Street, which paralleled the Burlington Railroad right-of-way. This R-3 classification had a north-south depth of approximately 140 feet and extended westerly from the eastern Village boundary for five blocks. The R-3 classification acted as a buffer zone between the railroad right-of-way and the R-2 zoning classification which extended southward to the Village limits. The record indicates that the Village maintained this identical R-3 staggered zoning area to the date of the instant litigation.

The subject property consists of two adjoining vacant lots, each with 50 feet frontages and depths of 213 feet, approximately 140 feet south of Burlington Street, located on the east side of Howard Avenue, a north-south street. Since 1948, the property has been zoned R-2.

Plaintiff acquired legal title to the property for approximately $3,900 in 1954. At the time of the hearing in the court below, the beneficial interests in the property were as follows: 25% was owned by G. Grant Dixon, Jr., who had acquired his interest from his father, who died in 1958; 25% was owned by Robert Dixon, the brother of G. Grant Dixon, Jr.; and the remainder was owned by Charles N. Hodge. Plaintiff made no effort to sell the property under the R-2 zoning prior to seeking the instant rezoning.

The property immediately adjacent to the subject property to the north, continuing northward to Burlington Street, is zoned R-3 and improved with three, two-family dwellings, one on each of the three lots. The property immediately adjacent to plaintiff's on the south is zoned R-2 and is improved with single-family residences, located on lots of approximately the same dimensions as those comprising the subject property. On the west side of Howard Avenue, across the street from the plaintiff's property, there are three lots, zoned R-3 and improved with two-family dwellings, which are located immediately south of Burlington Street; thereafter, continuing south, the property is zoned R-2 and is, improved with single-family dwellings. Owing to the slant of the railroad tracks, the three two-family dwellings on the west side of Howard Ave-

nue do not directly align with the three two-family residences on plaintiff's side of the street. Consequently, the southernmost two-family dwelling is directly across the avenue from the subject property.

The property abutting plaintiff's to the east, facing Clausen Avenue, is part of a resubdivision. Three lots, which face Clausen Avenue, are zoned R-2; the northernmost is improved with a single-family residence; the remaining two are vacant; the southernmost and the south half of the middle lot of the three immediately abut plaintiff's property. Immediately north of these three lots are three others, zoned R-3, which face on Burlington Street; the two westernmost lots are improved with two-family dwellings, and the remaining lot is vacant.

Plaintiff called three witnesses on its behalf: a realtor, a real estate consultant, and a real estate appraiser. Their testimony, in pertinent part, can be summarized as follows. They testified that the highest and best use of the subject property would be to develop it in the manner proposed by plaintiff, that is, with two, two-family residences, which were contemplated to be tenant-occupied; that the proposed development would enhance the value of the surrounding property; that the construction of single-family residences on the subject property would be inconsistent with the general character of the neighborhood; that the construction of either two single-family residence buildings (under the R-2 zoning) or the proposed development would not affect the fair market value of the surrounding property; that the proposed development would be entirely consistent with the character of the environment wherein it would be located; that it would be uneconomical to develop the subject property with two single-family rental units; and that the development proposed by plaintiff would neither essentially change the character of the neighborhood, nor adversely affect the health, wealth, or safety of the adjoining properties.

Plaintiff's witnesses also acknowledged that there was a need and demand for single-family property, improved or vacant, in the Village; that the subject property was capable of single-family development; and that single-family development would not have an adverse economic effect on the surrounding properties or the general neighborhood.

The testimony of the Village's expert witnesses, a city planning consultant and a real estate broker and appraiser, can be summarized, in pertinent part, as follows. Both testified that the highest and best use of the subject property was single-family residential under the existing R-2 classification, and the reasons for their opinions were these: the property was part of an area characterized predominantly by single-family residences; it had all the characteristics of other properties in the immediate area which had been developed for single-family residences; the property

was suitable for single-family use and development; the R-3 properties to the north, and those across the street from the subject property, did not make the site less suitable for single-family development, because those properties acted as a buffer zone between the railroad and the single-family development to the south; that the property drew its character, not from the R-3 properties developed with two-family residences, but from the single-family residences in the area; the property could be sold or developed and marketed for single-family use at a fair return to the seller or developer; and there was a strong demand for single-family dwellings in the Village.

The Village's experts further testified that there would be an adverse effect upon the existing single-family residences in the area should the property be developed for two-family homes, whereas the single-family homes would appreciate in value if the lots were developed for single-family use. Still further, they testified, *inter alia*, that two-family development of the property could be detrimental to the Village's overall zoning plan for R-2 and R-3 classifications, in that the development could establish a precedent for further extension of R-3 areas into single-family neighborhoods.

Another witness, a nearby property owner, was called to testify for the Village. He testified, in pertinent part, that he was basically against the zoning change because he believed the addition of four tenant units with absentee ownership would alter the neighborhood's basic character as single-family; and that such a development plan might affect the storm and sanitary conditions on the particular block.

So far as the evidence concerning property values, the plaintiff's appraiser testified that the market value of the property under the R-2 classification was between $20,000 and $25,000, but that it would be worth $31,000 to $35,000 if zoned under the R-3 classification. Defendant's appraiser testified that under the R-2 zoning, the property had a market value of between $24,000 and $30,000 and that under the R-3 classification the value would be $30,000 to $36,000.

After having heard the evidence recounted, the court below found, among other things, that the classification of the subject property as R-2 Residential imposed an undue economic hardship on plaintiff and had no reasonable relationship to the public health, safety, and welfare of the Village, insofar as the R-2 classification prohibited the construction thereon of the two-family dwellings proposed by plaintiff. The court's order held that the R-2 Residential classification, as it applied to plaintiff's proposed use of the subject property under the Village's zoning ordinance, was arbitrary and discriminatory, and, hence, invalid and unconstitutional; that plaintiff's proposed use of the subject property was

reasonable and proper; and that the Village would be enjoined from interfering with plaintiff's use of the subject property for the construction thereon of one two-family dwelling on each of the two lots in full compliance with all requirements set forth in the R-3 zoning classification.

The sole issue on review is whether the court below erred in holding that the R-2 Residential classification, as it applied to plaintiff's proposed use of the property under the Village's ordinance, was arbitrary and discriminatory, and, hence, invalid and unconstitutional.

## I.

The Village urges on appeal that the evidence adduced below established that the single-family zoning of plaintiff's property was not arbitrary, unreasonable, or discriminatory.

■■ The plaintiff's burden of proof in this type of case has been delineated by our supreme court in *First National Bank v. County of Lake* (1955), 7 Ill.2d 213, 130 N.E.2d 267, where the court stated that a presumption always obtains favoring the validity of a properly adopted zoning ordinance, and

> "One assailing the validity of such an ordinance as arbitrary and unreasonable as applied to particular property must prove by clear and affirmative evidence that the ordinance constitutes arbitrary, capricious and unreasonable municipal action, that there is no permissible interpretation which justified its adoption or that it will not promote the safety and general welfare of the public. (*People ex rel. Alco Deree Co. v. City of Chicago*, 2 Ill.2d 350; *Mundelein Estates, Inc. v. Village of Mundelein*, 409 Ill. 291.)" (7 Ill.2d at 225.)

At page 226, the court went on to declare the applicable rule in the context of zoning cases:

> "Where there is room for a legitimate difference of opinion concerning the reasonableness of an ordinance governing the use of private property or where such question of reasonableness is fairly debatable, the courts will not interfere with the legislative judgment. (*Herzog Bldg. Corp. v. City of Des Plaines*, 3 Ill.2d 206; *Trust Co. of Chicago v. City of Chicago*, 408 Ill. 91; *Ehrlich v. Village of Wilmette*, 361 Ill. 213; *Forbes v. Hubbard*, 348 Ill. 166.)"

■■ To overcome the presumptive validity of the Village zoning ordinance, as applied to its property, plaintiff has the burden to show by clear and convincing evidence that, in restricting plaintiff from using the subject property as desired, the existing zoning classification will not promote the public safety or convenience and bears no reasonable basis

in public welfare, thereby resulting in a monetary loss to plaintiff. See *First National Bank v. County of Cook* (1958), 15 Ill.2d 26, 31, 153 N.E.2d 545; *First National Bank & Trust Co. v. City of Evanston* (1st Dist. 1964), 53 Ill.App.2d 321, 325, 203 N.E.2d 6.

■■ The general legal principles applicable to zoning cases have long been established, and we find no reason for repeating them here. As we said at page 75 of our opinion in *Goeller v. City of Chicago* (1st Dist. 1968), 103 Ill.App.2d 67, 243 N.E.2d 444:

"Each case must determine the applicability of these principles in balancing the factors of the character of the neighborhood, the use to which nearby property is put, the extent to which property values are diminished by the restrictions imposed by the ordinance, and the gain to the public compared with the hardship imposed on the complaining property owners against the presumption of the proper exercise of legislative discretion. See, e.g., *LaSalle Nat. Bank of Chicago v. City of Chicago*, 5 Ill.2d 344, 350-351, 125 N.E.2d 609 (1955); *LaSalle Nat. Bank v. County of Cook*, 12 Ill.2d 40, 46, 145 N.E.2d 65 (1957)."

■■ We have given consideration to each of these factors as they relate to the circumstances of the case at bar, and we find that the order entered in the court below was erroneous.

It is clear from a thorough reading of the record presented that the zoning plan under which the subject property is zoned has been in force, virtually without change, since 1948. The Village plan reflects the intent of its drafters that the "staggered" R-3 zoning south of Burlington Street was to provide a relatively uniform buffer zone in the locale of the subject property, beyond which the R-2 classification, or single-family zoning, would continue uninterrupted.

■■ The municipal body has the primary and basic responsibility to establish and draw the lines of demarcation between the zoning classifications and uses of property within its jurisdiction. This legislative discretion is not to be interfered with by the judiciary except where there is a clear showing of an abuse of discretion or where the legislative action is arbitrary, capricious, and unrelated to the public morals, safety and general welfare.

■■ The "staggered buffer zone" technique, adopted by the Village in 1948 and maintained without change, was the manner used by the Village for establishing residential zoning districts pursuant to the exercise by the Village of its police power. Plaintiff has failed to demonstrate or provide any authority to establish that such type of zoning exceeds the authority of the Village. We hold that the staggered buffer zone technique is itself a proper application of legally accepted zoning principles

which authorize the right of a municipality to set its own classifications. See *Mutz v. Village of Villa Park* (2nd Dist. 1967), 83 Ill.App.2d 1, 9, 226 N.E.2d 644; *Menolascino v. Village of Franklin Park* (1st Dist. 1969), 106 Ill.App.2d 472, 246 N.E.2d 122.

The next question is whether the Village zoning classification of R-2, based on the use of the staggered buffer zone technique, is valid as applied to plaintiff's property. While the experts for the respective parties differed in their opinions as to the highest and best use of the subject property, it is readily apparent that there was a need—indeed, a demand —for single-family property in the Village. Moreover, single-family development of the plaintiff's property was not only feasible, but such development would be wholly compatible with, and would not have an adverse economic effect upon, the surrounding properties or the general neighborhood.

In arriving at our conclusion here, we have followed the rationale espoused in *Graifman v. Village of Skokie* (1st Dist. 1966), 70 Ill.App.2d 159, 217 N.E.2d 495, where we stated at page 172: "In sum, and at the most, the evidence here demonstrates a difference in opinion as to the highest and best use of the subject property, and in that case the legislative judgment of the City Council must be conclusive." See also *Whittingham v. Village of Downers Grove* (2nd Dist. 1968), 101 Ill.App.2d 166, 173-174, 242 N.E.2d 460; and *First National Bank v. County of Lake, supra,* at page 226.

There is little doubt that the value of the subject property would be enhanced somewhat if the proposed uses, rather than those presently permitted, were allowed. However, that fact alone "would not be enough to warrant a court in finding the ordinance unconstitutional * * *. At best, the matter of lessened value brought about by application of the zoning restrictions is only one element to be considered." (*First National Bank v. County of Lake, supra,* at page 227.) The evidence here is that, having paid $3,900 for the subject property, the plaintiff has not established any real economic hardship as the result of the existing R-2 classification.

Accordingly, absent a showing by clear and convincing evidence that the R-2 classification was unreasonable or arbitrary, the resolution of this issue rests with the Village, not the judiciary.

For these reasons, then, the judgment order and injunction writ of the circuit court of Cook County must be reversed.

Reversed.

HAYES, P. J., and LEIGHTON, J., concur.