HARRY CARLSON *et al.*, Plaintiffs-Appellees, *v.* DR. RICHARD H. BRICELAND *et al.*, Defendants.—(THE COUNTY OF COOK, Intervenor Defendant-Appellant.)

First District (3rd Division)   No. 76-1467

Opinion filed June 7, 1978.

JIGANTI, P. J., dissenting.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Henry A. Hauser, and William E. Kenny, Assistant State's Attorneys, of counsel), for appellant.

O'Brien, Carey & McNamara, of Chicago (Peter B. Carey, Tom Scheuneman, and Marilyn F. Kalata, of counsel), for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

At issue here is whether the trial court erred in denying the petition of Cook County, the intervenor-defendant, for an injunction restraining the plaintiffs from conducting a garbage disposal operation on a tract of land in Cook County, without first being granted a special use permit by the county board of commissioners, as required by the county's zoning ordinance.

The plaintiffs, whose business is operating sanitary landfill operations, in which garbage is put into holes which later are covered with dirt, sought a declaratory judgment and temporary and permanent injunctions against the State Environmental Protection Agency (EPA) and its director, the defendants, seeking to invalidate conditions in a permit the EPA had issued the plaintiffs. This permit allowed the plaintiffs, subject to those conditions, to dig holes and bury garbage in them on a 40-acre, unimproved tract of land in an unincorporated area in the southwest part of Cook County. The disputed conditions the EPA placed on the permit prohibited the plaintiffs from doing anything to the land unless they first had complied with all applicable State statutes and local laws, regulations and zoning ordinances, including those requiring special use permits. The plaintiffs, however, claimed that the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1975, ch. 111½, par. 1001 *et seq.*), did not authorize the EPA to set such conditions on permits it issued. Contending that the State possessed exclusive authority to issue such regulations, they further argued that State law prevented the EPA from establishing conditions delegating the authority to regulate garbage disposal operations to local governmental units.

At this point, Cook County (the County), a home-rule unit, promptly intervened as a defendant and counterclaimed, alleging that the garbage disposal site was subject to the county zoning ordinance because it was within an unincorporated area of Cook County. The County also contended that the plaintiffs should have been enjoined from creating their proposed garbage operation until the county board granted them a special use permit required by the county zoning ordinance.

The circuit court dismissed the County's counterclaim and granted the plaintiffs a summary judgment invalidating the contested conditions in the permit, while upholding the permit's validity. Subsequently, on the County's motion the trial court remanded the case to the EPA. After the EPA reviewed the site's suitability for garbage disposal purposes, it issued a supplemental permit authorizing the plaintiffs to develop the proposed use. When both the EPA and the plaintiffs then stipulated that their

controversy had been rendered moot because the conditions contested by the plaintiffs had been eliminated from the permit, the trial court dismissed the case between these two parties. The court also entered judgment for the plaintiffs against the County, and the County has appealed that order, which denied the County an injunction halting the development and operation of the refuse disposal operations.

On appeal, the County contends that its zoning restrictions should have been considered by the EPA before the refuse disposal operation, which is referred to in the Cook County Zoning Ordinance as a sanitary landfill, was approved. Specifically, the County argues: (1) its zoning restrictions are authorized by the home rule power granted in article VII, section 6(a) of the 1970 Illinois Constitution (Ill. Const. 1970, art. VII, §6(a)) because they involve the local governmental affairs of Cook County; (2) even if its restrictions conflict with the Act, those restrictions take precedence over the pre-home-rule act, pursuant to section 9 of the constitution's transition schedule (Ill. Const. 1970, art. XIV, §9); (3) its zoning restrictions have not been preempted by the Act; and (4) even if the zoning restrictions do conflict with the Act, they should not be construed as legitimate, concurrent regulations.

In reply, the plaintiffs argue that it is the court's responsibility to interpret when a home rule unit may exercise its power under the constitution. They contend that our supreme court has ruled that where the regulation of a solid waste disposal site, or sanitary landfill, is, as here, a regional or statewide concern delegated to the EPA by the Act, that regulation is the sole province of the State and should not be interfered with by a home rule unit of local government, such as the County. The plaintiffs concede, however, that if the location and control of refuse disposal sites by home rule units is authorized by the constitution, then the County's other arguments are correct and the County is entitled to judgment.

The 1970 Constitution, as a response to some of the pressing local problems faced by this State, adopted the concept of "home rule." Article VII, section 6, the heart of the local government provision, provides:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

The purpose of home rule was to expand the previously narrow scope of authority of home rule units such as Cook County. (*Minetz, Recent Illinois Supreme Court Decisions Concerning the Authority of Home Rule Units to Control Local Environmental Problems*, 26 De Paul L. Rev. 306, 307 (1977).) And the convention evinced its intent that the idea of

home rule be a key weapon in the battle against pollution, noise, inadequate garbage disposal, inefficient planning and zoning, and the myriad other problems confronting citizens and government officials by conferring upon home rule units a grant of authority which probably was the broadest in the nation. (See Parkhurst, *Article VII—Local Government,* 52 Chi. B. Rec. 94, 99 (1970).) Clearly, in adopting home rule, the framers of the new constitution intended to reverse the presumption against local authority, and establish a new presumption in favor of municipal and county rule. 26 De Paul L. Rev. 306, 308.

In the years since the home rule provisions were adopted, however, controversy about the proper relationship between the State government and a home rule unit, and the State and its agencies, has arisen. Specifically, in the environmental setting, the questions have been whether the Act has preempted the rights of home rule units to legislate on issues with environmental impact, and whether the broad grant of power given the home rule units includes the power to legislate on environmental problems. 26 De Paul L. Rev. 306, 309.

Although in *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, 322 N.E.2d 11, the supreme court held that the City of Chicago was obligated to comply with the Act, the court at the same time noted:

> "[I]t was not the intention of the [constitutional convention] committee that the local government units be prohibited from acting in this field. It was instead the intention of the committee that under the leadership of the General Assembly the intergovernmental efforts complement one another.
>
>             * * *
>
> [A] local governmental unit may legislate concurrently with the General Assembly on environmental control." (*City of Chicago,* at 488-89.)

The supreme court reaffirmed its position that the State and home rule units could legislate concurrently on environmental problems twice in the following year in *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6, and *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 338 N.E.2d 15.

The same year, though in *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 409, 343 N.E.2d 493, a case involving a village which was not a home rule entity, the majority opinion stated that the court's statement quoted above in *City of Chicago* was dictum. The court in *Carlson* strongly relied on its previous decision in *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, 288 N.E.2d 432 to reach this conclusion, and it rejected concurrent jurisdiction between a non-home-rule village, the Village of Worth, and the State; yet, significantly, *O'Connor,* like *Carlson,* never grappled with the issue of a home rule unit's power. And in *Carlson* there were vigorous dissents.

Although the plaintiffs cite two cases decided after *Carlson* as authorities for the position that the regulation of environmental matters is not a matter for home rule units, neither *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63 Ill. 2d 256, 347 N.E.2d 716, nor *City of Des Plaines v. Chicago & North Western Ry. Co.* (1976), 65 Ill. 2d 1, 357 N.E.2d 433, is dispositive of that issue in the context presented by this case.

The decision in *Metropolitan Sanitary District* applied not to garbage disposal, but to the attempted regulation of a regional sewage treatment plant by the City of Des Plaines. There, the "fundamental difficulty" which led the court to reject local regulation was that because the treatment plant the District, a governmental entity itself, proposed to locate in Des Plaines also would have served six other municipalities, some of them home rule units, allowing the Metropolitan Sanitary District, a regional government entity, to be regulated by a part of that region, such as the City of Des Plaines, would be "incompatible with the purpose for which it [the District] was created." (*Metropolitan Sanitary District,* at 261.) That "fundamental difficulty" does not exist in the present case, since no local municipality within Cook County is attempting to regulate the County itself. In addition, any pollution which might emanate from the proposed garbage disposal site would be much more localized than that caused by a regional sewage treatment plant serving a large geographical area.

In *Chicago & North Western Ry. Co.,* the court held that the city's ordinance limiting noise emissions was not properly a subject for home rule regulation because it sought to regulate both noise sources within Des Plaines which might affect people outside the city, as well as noise sources outside Des Plaines which would affect residents of the city. Although the court there ruled that the noise ordinance did not pertain solely to local affairs, and so was not a fit subject for a home rule unit's regulation, the decision in *Chicago & North Western Ry. Co.* is not a useful precedent in this particular case, where we are not concerned with pollution which moves from village to village, such as the moving railroad cars creating noise emissions which were central to the holding in *Chicago & North Western Ry. Co.* Instead, we are dealing with zoning restrictions in an exact, definite area wholly within the home rule unit's boundaries, with either no extraterritorial effect or an extraterritorial effect which, if it exists at all, is at most negligible.

Therefore, because the constitution's framers intended to favor regulation by home rule units, and there is no clear-cut precedent eliminating Cook County's home rule authority over the location of refuse disposal operations, we adhere to the supreme court's prior holding in *City of Chicago v. Pollution Control Board.* On that basis, we conclude

that the County's zoning restrictions were applicable to the plaintiffs' activities, and the trial court erred in denying the County's motion to enjoin the plaintiffs from disposing of any garbage in the Cook County unincorporated area without first complying with the County's regulations requiring a special use permit.

This conclusion is buttressed by several policy considerations. If this court were to hold that the State has exclusive authority to regulate the location of garbage disposal through the EPA and to deny local home rule government entities a voice in the location of such operations, numerous and immediate problems are predictable. The EPA was established to provide technical expertise in resolving environmental problems. No doubt the EPA is well equipped to carry out its mission of regulating the day-to-day operations of a garbage disposal operation, and has the expertise to determine the standards such an operation should comply with after it is established. Accordingly we do not take issue with its authority to regulate such matters, but only with the proposition inherent in the ruling of the circuit court that the EPA should have exclusive and final control of where in Cook County a sanitary landfill should be placed, regardless of the opinions of local citizens and local home rule governments. Though the EPA undoubtedly has an excellent grasp of the technical problems which the operation of a sanitary landfill involves and the effects of those problems on the environment, the EPA lacks the expertise and experience in land use problems that local zoning and planning boards functioning on behalf of home rule entities should be expected to possess. It is the latter expertise and experience which is called for in evaluating the factors relevant to a determination of where garbage disposal operations in cities, villages and unincorporated areas in Illinois should be located.

Moreover, the EPA is not equipped to afford minimum due process protection for the rights of persons or municipalities which may be adversely affected by the location of garbage disposal sites in areas not zoned for that use. Local zoning and planning boards hold public hearings in the localities of proposed land use changes before deciding whether to permit such changes; specifically, the Cook County zoning board follows a long-standing practice of holding its hearings reasonably close to the area affected by a proposed zoning change or application for a special use permit. The EPA, however, is not required to hold public hearings in local areas where land use for garbage disposal purposes is proposed. The rules of the Illinois Pollution Control Board provide only that where hearings are required, they must be held somewhere in the county where the affected land is located. Moreover, the only requirements set forth in those rules for hearings in connection with a permit for a sanitary landfill is that a hearing be held where the permit is

denied and the applicant requests a hearing on the denial, a situation which did not occur in this matter, or that a hearing be held when a permit is issued and a party files a complaint seeking its revocation. There is no provision that the EPA *sua sponte* notify the public and hold a public hearing, when a permit application has been filed and the EPA has not yet acted upon it. Giving the EPA exclusive control over deciding where garbage disposal sites should be located would deprive local residents of the opportunity to appear at public hearings, prior to a permit's issuance, before the administrative decision-making body in locations conveniently near to their homes to present evidence, to testify, and to cross-examine expert witnesses who support the establishment of a garbage disposal operation in a particular location.

Indeed, in the case before us, the record contains no evidence that any public hearings were held, or that any local citizens were given an opportunity to express their views about whether a sanitary landfill should be located in or near their neighborhood in a public hearing before the EPA. In addition, because the EPA is not required to issue written findings substantiating the initial issuance of a permit for a refuse disposal operation in the location it approves, local citizens might not even be informed after the fact why the EPA allowed a garbage dump in a specific location in contravention of zoning restrictions.

Further, if the EPA is permitted exclusive control over the location of sanitary landfills, the Act's scope logically could be extended to include exclusive regulation over the location of an infinite variety of other intensive land uses—for example, the location of steel mills and other heavy industrial plants with similar potential for causing environmental damage. Such a trend would exclude local home rule governments from effective control of land use through their zoning and planning powers.

Also, if the EPA is authorized to allow sanitary landfills in areas zoned and planned by officials of home rule entities for less intensive uses, local zoning and land use planning will be frustrated. Cook County adopted a comprehensive amendment to its zoning ordinance and enacted a comprehensive land use plan to guide its future development as recently as January 1976. Yet, that zoning ordinance could not be utilized to protect the value and quiet enjoyment of permitted uses in the less intensive zoning districts from the adverse effects of garbage disposal operations approved by the EPA. The County's land use plan could not be effectively implemented because a site for refuse disposal authorized by the EPA might not be compatible with the recommended uses in such less intensive districts; yet it would take precedence over them and frustrate development of the recommended uses. Occasions might arise where expensive capital improvements, such as sewer and water utility systems, had been installed in reliance upon residential zoning and

planning ordinances permitting residential development, but such development would be thwarted if the EPA granted a permit for the location of a sanitary landfill in the area, thus rendering the utility's system useless, and killing the planned residential development.

An historical analysis also suggests that the State should not be given exclusive control over the regulation of garbage disposal, for the history of garbage disposal has been one of local regulation. Cases like *Montgomery v. City of Galva* (1969), 41 Ill. 2d 562, 244 N.E.2d 193 and *Strub v. Village of Deerfield* (1960), 19 Ill. 2d 401, 167 N.E.2d 178, and section 11—19—5 of the Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—19—5), which authorizes local governmental units to dispose of garbage through the creation of sanitary landfills as well as by other methods, emphasize the heritage of local regulation of such problems as solid waste disposal. And, that history of local regulation makes sense, for it is difficult to conceive of a concern more local than where garbage should be disposed of. While *Carlson* expressed the opinion that local regulations of landfills had been inadequate (*Carlson*, at 409) for failing to fulfill the purposes of the Act, the cases referred to above nonetheless demonstrate that regulation in this sphere has been a matter of local governmental concern. It may be that the powers delegated to local authorities prior to home rule were not sufficient to solve the problems posed by the need for regulation of garbage disposal, and that the lack of authority of local government entities to make cooperative agreements with other entities was partially responsible for this inadequate regulation. Still, *O'Connor* does not detract from the fact that zoning decisions regarding garbage disposal traditionally have been construed as matters pertaining to the government and affairs of local governmental entities. (*Consumers Co. v. City of Chicago* (1924), 313 Ill. 408, 145 N.E. 114; *Montgomery.*) Nor does *O'Connor* hold that where a home rule unit exists, the right to have something to say about the location of the garbage disposal operation should be withdrawn from that home rule unit by court decision.

Finally, an examination of the constitutional provisions regarding home rule power also demonstrates that Cook County should be given a voice in the location of the refuse disposal site which is the subject matter of this case. Both zoning (Ill. Rev. Stat. 1975, ch. 24, par. 11—13—7 *et seq.;* Ill. Rev. Stat. 1975, ch. 34, par. 3151 *et seq.; Johnny Bruce Co. v. City of Champaign* (1974), 24 Ill. App. 3d 900, 903, 321 N.E.2d 469; *LaSalle National Bank v. Village of Western Springs* (1974), 22 Ill. App. 3d 533, 317 N.E.2d 646) and the regulation of garbage disposal (Ill. Rev. Stat. 1975, ch. 24, par. 11—19—5; *Montgomery; Strub*) pertain to public welfare and local affairs. Accordingly, because of the broad construction to be given home rule power, that power should be interpreted to

include, as here, zoning requirements for garbage disposal facilities, under article VII, section 6 of the constitution, which gives home rule units the authority to regulate matters pertaining to their public welfare and local affairs. Unless the general assembly preempts Cook County's home rule powers through sections 6(g), (h) or (i) of article VII of the constitution, which specify the conditions under which the general assembly may deny, limit or preempt the powers of a home rule unit, Cook County's authority to act concurrently with the EPA in determining the proper location for garbage disposal facilities should not be denied by judicial action.

Thus, the sad irony of the position advanced by the plaintiffs, and accepted by the EPA and the circuit court, is that less than a decade after the constitutional convention saw fit to usher in an era of home rule in this State—a decision hailed as a major step in the direction of progressive government—the State would be authorized, without legislative sanction, to cut the heart out of that concept in the name of regional and statewide control over so mundane a determination as where garbage should be disposed of. And the resulting anomaly is that, even though the EPA has not sought to exclude the County from the decision-making process here, the EPA will be saddled with this responsibility solely because of the urgings of the plaintiffs, who are the ones seeking to avoid the County's regulation. The effect of excluding the County would be to severely undercut the very protection the concept of home rule government was intended to afford local citizens. The plaintiffs should not be permitted to operate a sanitary landfill at the cost of negating the concept of home rule and diminishing or denying the rights of local citizens in home rule units to be heard by their local officials on where refuse disposal operations should be conducted.

Counties which are home rule units of government should be given the power to legislate, with the concurrence of the EPA, on where refuse disposal should take place in their unincorporated areas. Otherwise, the county of Cook—a home rule unit, the site of the third most populous city in the nation, and a county containing nearly half the population of this State and a population greater than that of at least 40 States—would have no authority to protect its citizens by participating in decisions regarding where garbage disposal operations should be situated. Every home rule unit would be forced to depend solely on the State's judgment with respect to proper sites for garbage disposal for safeguarding of the interests of its residents. And any chance for local control of the location of garbage disposal operations would be lost, delegated to a distant bureaucracy which, occupied with other concerns and pressures, might not even hear the voices of local citizens, let alone heed them.

Judgment reversed and remanded, with directions that the circuit court

enter judgment for the defendant, enjoining the plaintiffs from conducting their garbage disposal operation until they first are granted a special use permit by the county board of commissioners.

Judgment reversed and remanded with directions.

McGILLICUDDY, J., concurs.


Mr. PRESIDING JUSTICE JIGANTI dissenting:

Carlson received a permit from the Environmental Protection Agency to develop a solid waste disposal site in an unincorporated area of Cook County. The issues in this case are framed by way of a counterclaim filed by the County which sought to enjoin Carlson from beginning any landfill operations unless and until he received a special use permit from the Cook County Board of Commissioners. The use permit is necessary pursuant to a Cook County zoning ordinance which requires such a permit for landfills subsequent to hearings and findings made by the Zoning Board of Appeals. The trial court dismissed the counterclaim.

The County, a home rule unit, derives its powers from the Ill. Const. 1970, art. VII, §6:

> Powers of Home Rule Units (a) * * * Except as limited by this Section, a home rule unit may exercise any power and perform any function *pertaining to its government and affairs* including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt. (Emphasis added.)

Both Carlson and the County agree that the sole question is whether the application of Cook County zoning power to sanitary landfill operations sought to be conducted in Cook County is a matter "* * * pertaining to its government and affairs." The resolution of this issue is dependent upon whether sanitary landfills are of regional or statewide, as opposed to local, concern.

Carlson relies principally on the cases of *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, 288 N.E.2d 432, and *Carlson v. Village of Worth* (1976), 62 Ill. 2d 406, 343 N.E.2d 493. Carlson points out that *O'Connor* traced the legislative history of the Environmental Protection Act as it relates to the regulation of solid waste disposal, and that the *O'Connor* court observed that the general purpose of the Act as set out in section 2(b) was to "* * * establish a unified, state-wide program * * * to restore, protect and enhance the quality of the environment* * * ." (*O'Connor*, at 366.) *O'Connor* also states:

> "In our opinion, to hold here that the city's use of the proposed

site as a landfill may be permitted only upon issuance of a conditional use permit by Winnebago County, or that the county, by reason of its zoning ordinance may prohibit such use, contravenes the clearly expressed legislative intent that such operations be conducted only upon issuance of a permit from the Environmental Protection Agency. By the enactment of the Environmental Control Act, the General Assembly has expressly declared the need for 'a unified state-wide program' and provided the means for issuance of appropriate permits under regulations promulgated after taking into account precisely the conflicting interests shown by this record." *O'Connor,* at 367.

The supreme court commented on the *O'Connor* decision in *Carlson:*
"The opinion in the *O'Connor* case reviewed the history of legislative efforts to control refuse disposal sites, and that history need not be repeated here. Shortly stated, it indicated that local regulation had proved unsatisfactory. The difficulties encountered resulted in the passage of the Environmental Protection Act, which contains the following legislative finding: '(ii) that because environmental damage does not respect political boundaries, it is necessary to establish a unified state-wide program for environmental protection and to cooperate fully with other States and with the United States in protecting the environment;* * *.' (Ill. Rev. Stat. 1973, ch. 111½, par. 1002.) And the opinion of the appellate court in the present case pointed out that provisions which would have expressly reserved concurrent authority to local governmental units were deleted prior to passage of the Environmental Protection Act. 25 Ill. App. 3d 315, 322." *Carlson,* at 409.

The supplemental opinion in *Carlson* stated that based on the Environmental Protection Act itself, its legislative history, and preceding legislation, the General Assembly intended to "exclude any authority of local political entities which would interfere with or frustrate the objective of establishing a unified state-wide system of environmental protection." (*Carlson,* at 418.) Mr. Chief Justice Ward in his dissenting opinion notes that "* * * the question as to the exclusivity of the State's authority has been settled by this opinion." *Carlson,* at 426.

The County responds that regulation of sanitary landfills has a long history of local involvement and control and that such regulation has consistently and still does pertain to the local government and affairs of the County of Cook. That argument is bottomed on the provisions of the home rule article. The County relies on 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1619 (hereinafter Proceedings). There the Local Government Report stated that the grant of local powers was to

ensure that certain counties and cities receive the broadest possible range of powers to deal with problems facing them. Zoning and regulation of garbage have historically been subject to local control. It is interesting to note that in their opening brief on this point the County did not mention either *O'Connor* or *Carlson*. In their reply brief they assert that the *O'Connor* and *Carlson* decisions are "particularly unpersuasive" on the issue because they had not been presented with the home rule issue which is now before this court. Even more importantly, they contend, the basic underpinning of both *O'Connor* and *Carlson* is the acceptance of the General Assembly's conclusions expressed in the Environmental Protection Act that solid waste disposal is a matter of statewide concern. The County submits that this is an abandonment of judicial power and an implied preemption of home rule authority.

I am not of the opinion that *Carlson* and *O'Connor* can be distinguished in the way the County attempts to distinguish them in their brief nor as the majority opinion does. Both the brief and the majority opinion posit the idea that the cases are distinguishable because neither *O'Connor* nor *Carlson* involved home rule units. Neither explained the significance of a home rule unit in this context. A home rule unit is a County that has an elected chief executive officer and any city, village or incorporated town of 25,000 people. Additionally, any other city, village or incorporated town less than that population can by referendum become a home rule unit. A home rule unit by referendum may elect not to be a home rule unit. (Ill. Const. 1970, art. VII, §6(a).) The arguments in favor of home rule units are many. The overall impetus for passage of the home rule provision was to increase the autonomy of cities and counties. (7 Proceedings 1614.) That increased authority, however, was only to the extent that it pertains to "its government and affairs." The supreme court in *O'Connor* and *Carlson* has already decided that sanitary landfills do not pertain to "government and affairs" of local units of government.

The County attacks the *O'Connor* and *Carlson* opinions because they rely on the General Assembly's conclusion, as expressed in the Environmental Protection Act, that solid waste disposal is a matter of statewide concern. The supreme court has directly ruled on this matter and it is not the function of this court to challenge that ruling. The contention that the supreme court has abandoned an important judicial power by accepting the conclusion of the General Assembly is without merit. The Environmental Protection Act is not determinative of whether conduct falls within the grant of home rule powers, it provides further evidence of the recognition of what is a matter of statewide concern. *Des Plaines v. Chicago & North Western Ry. Co.*

Two cases do deal with home rule units, *Chicago & North Western Ry. Co.* and *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63

Ill. 2d 256, 347 N.E.2d 716. In *Metropolitan Sanitary District* the city of Des Plaines, a home rule unit, enacted an environmental ordinance requiring a permit before a sewage treatment plant could be constructed. The Metropolitan Sanitary District had already secured a permit from the Illinois Environmental Protection Agency for the construction and operation of a sewage plant and refused to apply for a city permit, contending that the compliance with the State permit requirement was sufficient. The court there said it would only consider whether the environmental regulation of a regional sewage treatment plant, serving a large area embracing numerous home rule municipalities, pertains to the government and affairs of the city of Des Plaines. The court found that it did not because the Metropolitan Sanitary District also serves six other municipalities, some of which are themselves home rule units and all of which could become so. The court in *Metropolitan Sanitary District* held that the application of the Des Plaines ordinance to a regional sewage treatment plant is not within the grant of the home rule power. The court reasoned that to permit a regional district to be regulated by a part of the region is incompatible with the purpose for which the regional district was created. The difficulty is compounded to the extent that future developments enable other parts of the region to adopt regulations which may be inconsistent.

The majority opinion finds *Metropolitan Sanitary District* distinguishable because "no local municipality within Cook County is attempting to regulate the County itself." This is exactly the effect of the holding in the case at bar. The County may now regulate the State in the placement of sanitary landfills through its zoning laws.

The majority opinion in the instant case only speculates that the pollution that would emanate from what it calls, eschewing euphemisms, a garbage disposal site would be much more localized than that caused by a "large" sewage treatment plant.

In *Chicago & North Western Ry. Co.* the city of Des Plaines was a home rule unit which enacted a noise control ordinance. The Illinois Pollution Control Board had adopted certain regulations prescribing limitations of noise emissions pursuant to the authority contained in the Environmental Protection Act. The court found that noise pollution is a matter requiring regional, if not statewide, standards and controls. It found the attempt of the city of Des Plaines to regulate noise pollution emissions was not within the home rule power granted. The majority opinion in the instant case says that the *Chicago & North Western Ry. Co.* opinion serves no useful precedent where we are concerned with pollution which does not move from village to village. I cannot agree that that is a distinction. The significance of the *Chicago & North Western Ry. Co.* in the context of this case is that a home rule unit does not have

authority to pass laws on environmental problems in matters of regional or statewide concern.

The majority opinion says that it "would adhere to the Supreme Court's prior holding in *City of Chicago v. Pollution Control Board.*" The holding alluded to in that statement refers to that previously quoted portion of the majority opinion taken from the *City of Chicago* that "a local governmental unit may legislate concurrently with the General Assembly on environmental control." I believe it is beyond the power of this court to so hold because of the express disavowal of that proposition in *Carlson.*

A substantial portion of the majority opinion is devoted to what it calls policy considerations to buttress its conclusions that the county zoning restrictions were applicable to the permit issued by the Environmental Protection Agency. That argument reiterates the philosophy of the majority that sanitary landfills are of local concern. That issue was laid to rest in *O'Connor* and *Carlson.*

The *Carlson* and *O'Connor* cases hold that sanitary landfills are matters of regional and statewide concern. Any doubt that those opinions were equally applicable to home rule units were resolved in *Chicago & North Western Ry. Co.* and *Metropolitan Sanitary District.* I would affirm the judgment of the trial court.