(No. 47838.—<span style="background:black">        </span>

THE CITY OF DES PLAINES, Appellee, v. CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant.

*Opinion filed Oct. 1, 1976.—Rehearing denied Dec. 2, 1976.*

RYAN and GOLDENHERSH, JJ., and WARD, C.J., dissenting.

James P. Daley and Thomas E. Greenland, of Chicago, for appellant.

Di Leonardi & O'Brien, Ltd., of Des Plaines (Robert J. Di Leonardi and Robert S. Minetz, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Chicago and North Western Railway Company (hereinafter North Western), was found guilty of 18 violations of plaintiff's, the City of Des Plaines, "Control of Unwanted Noises" ordinance. It was fined $500 and costs. On appeal, the appellate court affirmed

the judgment. (*City of Des Plaines v. Chicago and North Western Railway Co.*, 30 Ill. App. 3d 944.) We granted North Western leave to appeal, in which it primarily contends that the Illinois Noise Pollution Control Regulations adopted by the Illinois Pollution Control Board under authority of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1025) preempted Des Plaines from enforcing its ordinance.

The facts are undisputed. North Western operates a suburban commuter service in the Chicago area. In connection therewith, it maintains a fleet of diesel locomotives and passenger cars in various rail yards throughout the area of its service. One of these yards is located in Des Plaines, where four locomotives and 19 or 20 passenger cars are stored overnight during the week. The locomotives and cars are used each weekday morning to form four commuter trains, which leave the yard beginning at 6:40 a.m. and return in the evening after 5 p.m. The initial and final stop of each train is the City of Des Plaines. Depending upon weather conditions, the diesel locomotives are either run at idle overnight or are started in the morning prior to their departure.

Des Plaines, a home rule municipality, enacted a noise control ordinance, effective October 16, 1972. On March 11, 1974, it served complaints on North Western charging 27 violations of its ordinance during the month of November, 1973. The alleged violations were based upon the noise resulting from the preparation of the four diesel locomotives prior to their morning departure. At trial, North Western was found guilty of 18 of the 27 charges.

The Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1001 *et seq.*), effective July 1, 1970, provided in section 25 (ch. 111½, par. 1025) that the Illinois Pollution Control Board may adopt regulations prescribing limitations on noise emissions. Pursuant to this authority, the Board adopted such regulations on July 26, 1973, which included limits on noise emissions from

railroad yards. The regulations, however, provided a minimum 12-month grace period for existing noise emission sources to effect compliance with the new standards. It was during this grace period that the violations of the Des Plaines noise ordinance by North Western occurred.

North Western maintains that environmental regulation of noise pollution has been preempted by the State under the noise regulations adopted by the Pollution Control Board. Accordingly, it argues, Des Plaines has no authority to enact a noise control ordinance. Prior to a consideration of this issue, however, we must determine, although the parties have not specifically raised this question, whether the regulation of noise pollution falls within the grant of home rule powers contained in section 6(a) of article VII of the 1970 Constitution. That section provides, in pertinent part:

> "(a) *** Except as limited by this Section, a home rule unit may exercise any power and perform any function *pertaining to its government and affairs* including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." (Emphasis added.)

In *Ampersand, Inc. v. Finley,* 61 Ill.2d 537, 539-40, which considered the effect of this provision, we noted that "[t]he terms of this grant are broad and imprecise and were purposely left without definition. [Citations.] It was the intention of the constitutional convention to refrain from writing into the Constitution what has been referred to as a 'laundry list' setting forth all areas to be designated as of statewide concern or all areas to be designated as being of local concern. *** It was acknowledged in the constitutional debates that by virtue of the general language of the grant and the qualifying phrase 'pertaining to its government and affairs' the right of a home rule unit to exercise any power will ultimately depend upon an interpretation by this court as to whether

or not the power exercised is within the grant of section 6(a)." In explaining the intended limitation of this section, the Local Government Committee stated in its report to the constitutional convention: "It is clear, however, that the powers of home-rule units relate to their own problems, not to those of the state or the nation." 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1621 (hereinafter cited as Proceedings).

While noise pollution may initially appear to be a matter of local concern, an analysis of the problem reveals that noise pollution is a matter requiring regional, if not statewide, standards and controls. As with air or water pollution which may emanate from a small, local source and then travel outward to foul an entire area or region, noise pollution also extends beyond its source, although on a more limited scale than air or water pollution. Local municipalities often border upon one another. While certain categories of noise pollution may be confined within the boundaries of one municipality, such as an irate motorist sounding his horn, other categories are not so limited. A railroad yard or industrial district located on the boundary of one municipality will obviously affect other municipalities with noise pollution emissions. Of particular relevance is the question of noise emissions from trains in transit which may pass through numerous municipalities en route to their destination. During oral argument in the present case, counsel for Des Plaines acknowledged that the ordinance in question was designed to regulate unwanted noise emissions affecting Des Plaines residents whether or not the noise pollution originated within that municipality. Des Plaines, therefore, recognized in its ordinance that control of unwanted noise emissions was not a matter of local concern.

In *Metropolitan Sanitary District v. City of Des Plaines,* 63 Ill.2d 256, this court considered the issue of whether Des Plaines could require the sanitary district to comply with a city health ordinance in order to construct

a sewage treatment plant within the city, which would serve various municipalities. The health ordinance required that a permit be obtained if the sewage works were capable of causing or contributing to the emission of airborne odors or bacteria in violation of standards set forth in the ordinance. The sanitary district had previously secured a permit from the Illinois Environmental Protection Agency for the construction, operation and maintenance of the plant. (Ill. Rev. Stat. 1973, ch. 111½, pars. 1013(a)(ii)-(iv), 1039.) Compliance with the State permit requirements included compliance with the State air pollution standards. We held that the application of the Des Plaines ordinance did not pertain to its "government and affairs" within the meaning of section 6(a). While finding that the fundamental difficulty was that the regulation of a regional district by part of that region was incompatible with the purpose for which the district was created, we also recognized the regional nature of the environmental problem. We noted that the Local Government Committee of the constitutional convention reported that "Control of air and water pollution, flood plains and sewage treatment are often cited as important examples of areas requiring regional or statewide standards and control" (7 Proceedings 1642), and that similar sentiment was expressed during debates on the convention floor (4 Proceedings 3094-95, 3335). We further noted that in regard to the General Assembly's leadership role in the solution of environmental pollution, the General Government Committee wrote:

> "There are myriad problems which must be overcome in this effort to preserve our environment. Not least among these is the problem of duplication of efforts. It is essential to the cause that the inter and intra governmental efforts complement one another, that there be a coordinated plan of action with uniform standards." (6 Proceedings 700.)

We held this language could not be read to indicate the intent of the constitutional framers that home rule

municipalities possess the power to regulate regional or statewide environmental problems.

In enacting the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1001 *et seq.*), the General Assembly made certain legislative findings in regard to environmental problems. Included among those findings were:

> "(a) The General Assembly finds:
>
> ***
>
> (ii) that because environmental damage does not respect political boundaries, it is necessary to establish a unified state-wide program for environmental protection and to cooperate fully with other States and with the United States in protecting the environment;
>
> (iii) that air, water, and other resource pollution, public water supply, solid waste disposal, *noise*, and other environmental problems are closely interrelated and must be dealt with as a unified whole in order to safeguard the environment;
>
> * * *
>
> (b) It is the purpose of this Act, as more specifically described in later sections, to establish a unified, state-wide program ***." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 111½, par. 1002(a)(ii)(iii), (b).)

While this act is not determinative of whether the regulation of noise pollution falls within the grant of home rule power under section 6(a) of article VII, it does provide further evidence of the recognition of noise pollution as a matter of statewide concern.

In the present case, the attempt by the Des Plaines ordinance to regulate noise pollution emissions, which is not an environmental problem of local concern, is not within the home rule power granted by section 6(a) of article VII of the 1970 Constitution. The resolution of this question makes unnecessary a determination of the other issues raised.

Accordingly, the judgment of the appellate court is reversed.

*Judgment reversed.*

MR. JUSTICE RYAN, dissenting:

This opinion now extends into the field of noise pollution the same theory of preemption that has heretofore been applied in landfill and sewage disposal operations in *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360; *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, and *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63 Ill. 2d 256.

In *Village of Worth,* as noted in my dissent to the supplemental opinion on denial of rehearing and in the dissent of the Chief Justice, this construction conferred upon the Environmental Protection Agency authority which that agency itself as well as the Attorney General insisted was not intended by the legislature. Neither the Environmental Protection Agency nor the Pollution Control Board is a party to this suit, and neither one has filed briefs herein. Therefore, the majority opinion gave no consideration to the question of whether or not it is feasible or in fact possible for noise pollution throughout the State to be effectively policed by the Environmental Protection Agency.

It is interesting to note that the opinions of this court in the three cases cited above were bottomed on the fact that the Environmental Protection Agency had issued permits for the particular operation at issue in those cases. For this reason the majority concluded that the local governmental unit could not require compliance with the local ordinance.

In the case now before us there were no permits issued by the Environmental Protection Agency to the railroad for the emission of noise. In fact there was no State regulation of the noise emission for which the defendant was being proceeded against by the city. The Illinois Pollution Control Board had adopted regulations establishing limits on noise emissions from railroad yards, but they were not to become effective until a later date. Thus, at the time of the violation of the city ordinance there was

no State regulation of the emission of noise by the defendant. These facts completely distinguish this case from the three cases cited above.

Regardless of the factual distinction, I firmly believe that the preemption doctrine as espoused by the majority opinion is going to impose upon the Environmental Protection Agency an impossible burden of policing the entire State of Illinois, including every city and village, for the eradication of noise pollution. In this area, above all others, effective elimination of pollution must of necessity involve local governmental units. It will be absolutely impossible for the Environmental Protection Agency under the authority conferred upon it and the Pollution Control Board, by the Environmental Protection Act, to eliminate the offending noise eminating from every motor vehicle, siren, train whistle, and the like throughout the State. The majority opinion in effect invalidates every ordinance regulating horn honking, tire squealing, and noisy mufflers. Also, the majority opinion gives no consideration to the specific grant to municipalities of statutory authority to prevent and suppress noises. Ill. Rev. Stat. 1975, ch. 24, par. 11—5—2.

Any effective control of noise pollution requires that we adhere to the position of this court as stated in *City of Chicago v. Pollution Control Board* (1974), 59 Ill. 2d 484, that is, that local governmental units are not precluded from adopting and enforcing local ordinances in the environmental protection field, acting concurrently with the State.

MR. JUSTICE GOLDENHERSH joins in this dissent.

MR. CHIEF JUSTICE WARD, also dissenting:

The question here and in the earlier cases to which Mr. Justice Ryan refers is not one which can be clearly and easily settled. However, I, too, consider, especially in the case of home rule units, that local governmental units generally should be able to act concurrently with the State

in the environmental protection field. There will be instances where difficult problems may be presented, but the problems certainly would not be beyond solution. In any event this is to be preferred to the majority's holding that local governmental units, including home rule municipalities, have no power to protect themselves from environmental damage.

Illustrating the anomalous consequences of the majority's position, the city of Chicago, a home rule unit and the railroad center of the United States, is utterly without authority to act to protect its citizens from environmental harm caused by railroads, or, for that matter, caused by anything or anyone else. Every small village as well as every large city must depend for protection solely on the State's interest in their environmental problems and the adequacy of its protective action. I join in Mr. Justice Ryan's dissent.