THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RUBEN R. BUSTAMANTE, Defendant-Appellant.

Second District   No. 2—01—0520

Opinion filed October 8, 2002.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Timothy P. King, of Chicago, for appellant.

Meg Gorecki, State's Attorney, of St. Charles (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Milo Miller, of Jackson, Missouri, for the People.

JUSTICE CALLUM delivered the opinion of the court:
Defendant, Ruben R. Bustamante, was indicted with one count of

criminal damage to government-supported property, a Class 4 felony (count I) (720 ILCS 5/21—4(1)(a) (West 2000)), and one count of reckless conduct, a Class A misdemeanor (count II) (720 ILCS 5/12—5(a), (b) (West 2000)). The charges arose out of an incident in which defendant threw a beer bottle at a parked police car. The jury returned guilty verdicts on the two charges. Defendant filed a posttrial motion, arguing, *inter alia*, that the jury rendered legally inconsistent verdicts by finding that defendant simultaneously had mutually inconsistent culpable mental states. The trial court denied the motion. Defendant was subsequently sentenced to 24 months' probation conditioned on spending three weekends of confinement in the county jail, the completion of 40 hours of community service, and the payment of restitution and fines. Defendant timely appeals, arguing that the two verdicts are legally inconsistent and must be reversed and that the cause must be remanded for a new trial. We affirm.

At trial, Officer Donald Flowers of the Aurora police department testified that he was on duty on the evening of May 20, 2000, in the downtown area of the city. At 7:38 p.m., he was in his squad car parked on the north side of the street at 44 East Downer Place. He was checking the notes on his computer when the back window of the car shattered. Downer Place is a one-way street in a business district and has parking spaces on both sides of the street. There are two lanes of travel, each of which is eight feet wide. Flowers referred to a diagram to show the squad car's location. Down the street is a bridge and the Fox River. The river is approximately 30 feet from where his squad car had been parked. Flowers' squad car was parked directly in front of city hall at 44 East Downer Place. There were no public parking spaces immediately behind him, and Flowers did not remember any car parked behind him. There were some vehicles parked ahead of him a few spaces away.

As Flowers was checking his computer, he heard a loud crash, and glass hit him in the back of the head. He ducked down because he thought someone had shot at him. He rolled out of the vehicle and saw a gray Oldsmobile speeding away. There was not a lot of traffic in the area. Flowers got back into his car and pursued the Oldsmobile traveling west on Downer Place. Flowers followed it to Lake Street, where the vehicle turned left and he lost sight of it. Flowers went on to Woodlawn Avenue, where at the 200 block a citizen waved him down and stated that a gray vehicle had gone southbound on Woodlawn Avenue at a high rate of speed. Flowers continued southbound to the 300 block and found a gray vehicle matching the suspect's vehicle in the driveway of 312 Woodlawn Avenue. Flowers inspected the suspect's vehicle and found a 12-pack of Miller Genuine Draft beer in bottles on

the floorboard behind the driver's seat. There were only 11 bottles in the pack. When Flowers inspected his squad car, he found pieces of a Miller Genuine Draft beer bottle on the floor behind the passenger's seat. The glass from the rear window was everywhere; there was some on his clothing, on his back, and on the dashboard. His clothing was sticky and smelled of beer.

Flowers then went to the One-Stop at the corner of Lake and Gale Streets. Sergeant Davis and another unit were there with defendant and his friends. Flowers also spoke with a person named Enrique Cacique at 317 Woodlawn Avenue.

Cacique testified that he lived at 317 Woodlawn Avenue, which was near 312 Woodlawn Avenue. He heard squealing tires and saw a big car speeding by. It turned into the driveway of the house across the street, and then he saw two people jump a fence. The police came behind this car within a few seconds.

Jim Coursey was a detective of the Aurora police department at the time of the incident. He testified that he interviewed defendant after defendant signed a waiver of his rights. Coursey recorded a statement by defendant, which was played in court. (The tape is not included in the record on appeal.) Coursey further testified on cross-examination that defendant offered to pay for the window. Defendant stated he did not see the squad car, and he was attempting to throw the bottle out of the car so he would not have an empty beer bottle in his vehicle. Defendant said he threw the bottle toward the river and got scared when he saw that he had hit a squad car and when he saw the officer. Defendant did not try to blame anyone else during the interview.

The parties stipulated that the squad car belonged to the Aurora police department and was purchased and maintained using state and/or federal funds administered through state agencies.

Defendant testified that, while driving around downtown, he was drinking beer. He was a passenger in the car. He drank a beer quickly so that only suds were left in the bottle. He had consumed one beer. He did not want it in the car, so he stuck his hand out of the window and threw the bottle toward the river. (The court noted that he gestured with his arm fully extended as if he were pitching a baseball.) He did not want any empty bottles in the car because he had his license taken away for having empty bottles in the car. It was not too dark out. He did not see the police car and did not intend to throw the bottle at a police car. He got scared when he found out he hit a police car.

Defendant stated that the police car was closer to the river than was shown in the State's diagram. He saw a white van parked behind

the police car. There were vehicles also parked in front of the police car. He was located on the south side of the street closest to the river. He told the police what had happened and took responsibility for it. He never intended to throw a beer bottle at a squad car driven by the officer. Defendant heard a noise when he threw the bottle, and he left when he saw the officer get out. He did not stop because he was scared.

On cross-examination, defendant admitted that, when he was at the police station within three hours of the incident, he stated he had not been drinking during the previous eight hours. He then conceded in his testimony that he had had one Miller Genuine Draft beer out of the pack. He had no idea how far he was from the river. When the officer got out of the squad car, defendant told his friend to take off. When they got to the stop sign, he saw the officer behind him but still took off and then went to his friend's house at 312 Woodlawn Avenue. Once there, they jumped over a fence. The car traveled 30 to 40 miles per hour in a 20- or 25-mile-per-hour zone. He admitted they were trying to run away from the police and that he took responsibility for the incident only after being caught.

While the jury was deliberating, it sent the court the following question: "On the charge of reckless conduct, does the defendant have to have an intent to harm the officer?" The court consulted the parties. The court's answer to the jury stated:

"You have previously been given the definition of reckless conduct. As to your specific question as to intent, you must confine your deliberations to the law that I've previously given to you and the following:

A person is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in this situation."

See Illinois Pattern Jury Instructions, Criminal, No. 5.01 (3d ed. Supp. 1996).

With respect to the knowledge element of the criminal damage charge, the court had instructed the jury as follows: "A person knows the result of his conduct when he is consciously aware that such result is practically certain to be caused by his conduct." See Illinois Pattern Jury Instructions, Criminal, No. 5.01B (3d ed. Supp. 1996).

The jury returned a guilty verdict on each charge. In presenting his posttrial motion, defendant argued that the verdicts were legally inconsistent because defendant could not simultaneously act knowingly and recklessly. The trial court denied the motion, reasoning that defendant could have acted recklessly with respect to the officer and knowingly with respect to the property.

■ On appeal, defendant again argues that the jury verdicts were legally inconsistent and that he is entitled to a new trial. Where inconsistent verdicts of guilty are returned, a reversal and a new trial on all counts must follow. *People v. Hoffer*, 106 Ill. 2d 186, 195 (1985). In *Hoffer*, the jury convicted the defendant of murder, voluntary manslaughter, and involuntary manslaughter in a case where the defendant shot his sister's former boyfriend. The defendant testified that he thought the boyfriend, who often carried a handgun, was reaching for a gun at the time of the shooting.

In *Hoffer*, various definitional and issues instructions were given to the jury. The issues instructions for murder and voluntary manslaughter required the State to prove that the defendant acted *intending* to kill or do great bodily harm, or *knowing* that his acts created a strong probability of death or great bodily harm. The issues instructions for involuntary manslaughter required the State to prove that the defendant acted *recklessly* in performing the acts that caused the victim's death. *Hoffer*, 106 Ill. 2d at 192-93.

The court pointed out that the jury received an issues instruction on murder that required the State to prove the defendant did not believe circumstances existed that justified the use of force. By finding the defendant guilty of murder, the jury specifically found that the defendant did not believe his conduct was justified. At the same time, by finding him guilty of voluntary manslaughter, the jury determined that he did believe, although unreasonably, that his conduct was justified. Additionally, the jury concluded that the defendant killed another, intentionally or knowingly (murder, voluntary manslaughter) while simultaneously finding that the defendant recklessly but unintentionally caused the death of the victim (involuntary manslaughter). *Hoffer*, 106 Ill. 2d at 195.

Because a finding that the defendant acted intentionally or knowingly contradicts a finding that the defendant acted recklessly but unintentionally, the supreme court concluded that the mental states involved in these offenses were mutually inconsistent. The court noted, "Where a determination is made that one exists, the others, to be legally consistent, must be found not to exist." *Hoffer*, 106 Ill. 2d at 195. The supreme court affirmed the appellate court's decision to reverse all three convictions and to remand the cause for a new trial.

In *People v. Fornear*, 176 Ill. 2d 523 (1997), the defendant was charged with the aggravated discharge of a firearm and the unlawful use of a weapon in connection with the shooting of his fiancée. The jury returned verdicts of guilty of aggravated discharge of a firearm, which required proof of a knowing mental state, and an uncharged count of reckless conduct (which required proof of a reckless mental

state) that the jury was instructed to consider, at the defendant's request, as a lesser-included offense of aggravated battery. The defendant was acquitted of the aggravated battery charge.

There was evidence that the defendant shot his fiancée multiple times. Count I (aggravated battery with a firearm) charged that, in committing a battery, the defendant *knowingly* and without legal justification caused an injury to the victim by shooting her in the chest. Count II charged that the defendant committed the aggravated discharge of a firearm in that he knowingly discharged a firearm in the direction of the victim. The jury was instructed, however, that reckless conduct could be proved by a finding that the defendant recklessly performed an act that caused bodily harm to another.

The State argued that one shot that was fired in the direction of the victim was a knowing act of discharge, while a second act consisted of the defendant then firing the gun directly at the victim, striking her. The State asserted that the jury must have felt that the defendant fired this second shot recklessly, causing bodily harm. However, the supreme court rejected this argument, noting that there was no evidence to support the State's hypothesis that the defendant's mental state changed during the shootings. *Fornear*, 176 Ill. 2d at 533. The supreme court also rejected the State's argument that the mental state of knowledge "includes" the mental state of recklessness, an argument the court had previously rejected. *Fornear*, 176 Ill. 2d at 531, citing *People v. Spears*, 112 Ill. 2d 396, 407-08 (1986). The supreme court held that recklessness and knowledge are mutually inconsistent mental states and declined to " 'blur[ ] the distinction between the mental state of knowledge and the less culpable mental state of recklessness by assuming that the two invariably coexist.' " *Fornear*, 176 Ill. 2d at 531, quoting *Spears*, 112 Ill. 2d at 408.

The *Fornear* court further pointed out that, where neither the State's proof at trial nor the jury instructions distinguished between the defendant's intent when he fired the shots, there was nothing to alert the jury that the State or the defense was claiming different mental states as to different shots. The court concluded that the jury could not have rationally found separable acts accompanied by different mental states to support both the aggravated discharge of a firearm and the reckless conduct verdicts as legally consistent. *Fornear*, 176 Ill. 2d at 534.

The *Fornear* court pointed out that *Spears* provided the essential framework for analyzing the consistency of jury verdicts in the "troublesome context of multiple shots or victims" where it stated:
" '[W]here a claim of inconsistent guilty verdicts involves multiple shots or victims, the question is whether the trier of fact

could rationally find separable acts accompanied by mental states to support all of the verdicts as legally consistent. \*\*\*

\*\*\* We believe that the substance of the allegations charging the defendant, as an unequivocal expression of prosecutorial intent [citation], and what the evidence showed in relation to those charges, are of particular importance in determining whether guilty verdicts could rationally and consistently be based upon separable acts accompanied by the requisite mental states.' " *Fornear*, 176 Ill. 2d at 531-32, quoting *Spears*, 112 Ill. 2d at 405-06.

■ In the present case, defendant was charged with criminal damage to government-supported property. The offense is committed when a person "[k]nowingly damages any property supported in whole or in part with State funds, funds of a unit of local government \*\*\* or Federal funds administered or granted through State agencies without the consent of the State." 720 ILCS 5/21—4(a) (West 2000). The charge stated in pertinent part that "defendant knowingly damaged, without the consent of the City of Aurora, the rear window of a City of Aurora squad car, which is supported wholly or in part with State of Illinois funds or Federal Funds administered or granted through State agencies."

■ The offense of reckless conduct is defined as follows: "A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs recklessly the acts which cause the harm or endanger safety, whether they otherwise are lawful or unlawful." 720 ILCS 5/12—5 (West 2000). The reckless conduct charge alleged in pertinent part that defendant "endangered the bodily safety of Officer Flowers in that, while acting in a reckless manner, he threw a beer bottle at the squad car driven byu [*sic*] Officer Flowers which shattered the rear window of the squad car and caused glass to fly and hit Officer Flowers."

■ Obviously, the criminal damage offense requires a mental state of knowledge while the reckless conduct charge requires a mental state of recklessness, a less culpable mental state. However, while *Fornear* was concerned with mutually incompatible mental states regarding a defendant's act or course of conduct toward one victim, we are confronted with that "troublesome" area of determining whether two seemingly incompatible mental states can exist contemporaneously or nearly contemporaneously with respect to two victims or harms even though there was but one act. We believe defendant could have knowingly caused harm to the government property and could have recklessly endangered the safety of a person. *Fornear* is therefore distinguishable. The record here shows that defendant was charged separately with two crimes, and the jury was instructed as to the

mental state for each crime. Based on the evidence presented, the jury rationally could have concluded that defendant acted knowingly in damaging the government-supported property but acted recklessly in causing the consequential endangerment to the safety of the officer as evidenced by the shattered glass spraying the officer. The victims and the harms are clearly separable, and the State intended to charge and prove two separate crimes. The jury's question to the court showed that it was considering the mental state for each crime separately, and there is no suggestion that the jury might have confused the mental states as they related respectively to each of the two charges.

We find additional support for our conclusion in reviewing cases declining to apply the one-act, one-crime rule. It is possible to carve two crimes out of one act. Courts have determined that, in certain cases, one act can constitute two separate crimes where one offense is not a lesser-included offense of the other. *People v. Britt*, 265 Ill. App. 3d 129 (1994), discussed cases where one act constituted two crimes. In *Britt*, the reviewing court concluded that the defendant committed two crimes in that he committed aggravated arson where, by means of fire or an explosive, he knowingly damaged real property without the owner's consent, knowing that one or more persons were in the building, and he also committed murder by intentionally and unlawfully causing the death of another. The *Britt* court determined that aggravated arson was not a lesser-included offense of first-degree murder because each offense had an element not contained in the other, and thus, both convictions were sustained even though the defendant committed but one act.

In *People v. Shum*, 117 Ill. 2d 317 (1987), the defendant was convicted of both feticide and murder based upon his single shot that killed both a woman and her fetus. The supreme court stated that it was well settled that separate victims require separate convictions and sentences. *Shum*, 117 Ill. 2d at 363. The court determined that, because feticide was not a lesser-included offense of murder, separate convictions were proper even though they were based on one act. *Shum*, 117 Ill. 2d at 364.

In the present case, reckless conduct is not a lesser-included offense of knowingly damaging government-supported property. As we have explained, each has a distinct mental state, a separate kind of harm, and a separate victim. Analogizing to *Britt*, we determine that knowingly damaging government-supported property without the consent of the owner can be committed without recklessly endangering the bodily safety of a person. As in *Britt*, each offense has an element not contained in the other. See *Britt*, 265 Ill. App. 3d at 149-51.

We conclude that, based on the facts of this case, the jury rationally

could have found separate crimes supported by separate mental states and that the verdicts were legally consistent.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and GROMETER, JJ., concur.