808 N.E.2d 525 (2004)
347 Ill. App.3d 689
283 Ill.Dec. 559
The VILLAGE OF SUGAR GROVE, Plaintiff-Appellee,
v.
James RICH, d/b/a J.R.'s Retreat, Defendant-Appellant.
Nos. 2-03-0218 to 2-03-0225, 2-03-0272.
Appellate Court of Illinois, Second District.
March 4, 2004.
Rehearing Denied May 21, 2004.
*527 Timothy P. Dwyer, Law Office of Timothy P. Dwyer, St. Charles, for James Rich.
Steven A. Andersson, Mickey, Wilson, Weiler, Renzi & Andersson, P.C., Aurora, for Village of Sugar Grove.
Justice GILLERAN JOHNSON delivered the opinion of the court:
In this consolidated appeal, the defendant, James Rich, was issued 13 citations for violating the noise control ordinance of the plaintiff, the Village of Sugar Grove (the Village). Following a bench trial, the defendant was convicted on eight of the citations, sentenced to supervision, and fined $50 for each infraction. The trial court dismissed without prejudice the remaining citations. The defendant appeals five of his convictions. He also appeals the dismissal of four of the citations. On appeal, the defendant argues that (1) the Village's noise control ordinance violation is preempted by state law; (2) the trial court erred in refusing to admit into evidence a document that allegedly fell within the business document exception to the hearsay rule; and (3) his multiple convictions violate the one-act, one-crime doctrine.
The following facts have been discerned from the parties' bystanders report and the common law record.
*528 The defendant received 13 citations for violating section 4-5-1 of the Village Code of the Village of Sugar Grove (the Village Code). Section 4-5-1 of the Village Code provides:
"NOISE PROHIBITED: It shall be unlawful for any person to make, continue, or cause to be made or continued any excessive, unnecessary or unusually loud noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety with others within the Village." Sugar Grove Village Code § 4-5-1 (1998).
Section 4-5-4 of the Village Code further provides:
"PENALTY; REMEDIAL ACTION:
A. Violation; Penalty: Unless otherwise provided, any person violating any of the provisions of this Chapter shall be deemed guilty of a petty offense and, upon conviction thereof, shall be subject to penalty as provided in Section 1-4-1 of this Code. Each day such violation is committed or permitted to continue shall constitute a separate offense and shall be punishable as such under this Chapter." Sugar Grove Village Code § 4-5-4 (1988).
Three of the defendant's violations occurred on June 8, 2002. One of the defendant's violations occurred on June 14, 2002. The remaining violations occurred on June 15, 2002.
The trial court conducted a consolidated bench trial on October 18, 2002. The defendant proceeded pro se. The following testimony was admitted. Michael Schoenberger testified that at approximately 9 p.m. on June 8, 2002, he was within his home and all of his windows were closed. He heard extremely loud, excessive, unnecessary, and disturbing music coming from outside his home. Schoenberger determined that the music was being caused by an establishment known as J.R.'s Retreat. The defendant was the owner and operator of J.R.'s Retreat. Schoenberger testified that the music alarmed and disturbed him and his family, caused them great anxiety, and disturbed their comfort, health, repose, and peace. Schoenberger reported the noise to police. Schoenberger testified that the occurrence took place within the Village's boundaries.
Allen Ratliff testified that at approximately 9:56 p.m. on June 8, 2002, he was inside his home. He heard loud, excessive, unnecessary, and disturbing music coming from outside his home. Ratliff determined that the music was being caused by J.R.'s Retreat, which is owned and operated by the defendant. The music alarmed and disturbed him and his family, caused them great anxiety, and disturbed their comfort, health, repose, and peace. Ratliff notified the police. Ratliff testified that the occurrence took place in the Village.
After Ratliff testified, the parties stipulated that the remaining witnesses would testify the same as the previous two witnesses, with the exception of the time and date of the occurrences. Marsha Schuster would testify that she heard the disturbing music on June 8, 2002, at 8:32 p.m. and on June 15, 2002, at 9 p.m. Linda Sackett would testify that she heard the disturbing music on June 14, 2002, at 8:17 p.m. Carol Gammas would testify that she heard the disturbing music on June 15, 2002, at 8:39 p.m. Gerry Schuster would testify that he heard the disturbing music on June 15, 2002, at 10:10 p.m. Finally, Diane Schuth would testify that she heard the disturbing music on June 15, 2002, at 10:16 p.m.
The defendant testified that he agreed with the testimony of the Village's witnesses. He maintained, however, that he did not violate the ordinance. He attempted to offer into evidence a document. The *529 Village objected, claiming that the writing was irrelevant and hearsay. The defendant did not respond to the objection and the trial court sustained it. The defendant did not make an offer of proof and the document is not a part of the record. The defendant then asked for a continuance, which the trial court denied. Lastly, the defendant testified that he would have turned down the music had anyone complained to him directly.
Following the parties' closing arguments, the trial court found the defendant guilty of eight violations of the Village's noise ordinance. It sentenced the defendant to court supervision and fined him $50 for each offense. As to five of the citations, the Village's complaining witnesses had failed to appear. Accordingly, the trial court granted the Village's motion to dismiss those cases with leave to reinstate.
Following the denial of his posttrial motions, the defendant timely appealed his convictions in case Nos. 02-OV-3219, 02-OV-3220, 02-OV-3222, 02-OV-3223, and 02-OV-3227, which were based on the testimony of Sackett, Gammas, Marsha Schuster as to the occurrence on June 15, 2002, Gerry Schuster, and Schuth, respectively. Additionally, the defendant appeals from the trial court's dismissal of case Nos. 02-OV-3221, 02-OV-3224, 02-OV-3225, and 02-OV-3226.
Before addressing the merits of the defendant's appeal, this court has an obligation to consider, sua sponte, its jurisdiction over the appeal. Renzulli v. Zoning Board of Appeals, 176 Ill.App.3d 661, 662, 126 Ill.Dec. 116, 531 N.E.2d 411 (1988). An appellate court's jurisdiction is limited to review of appeals from final orders (107 Ill.2d R. 301), unless the order appealed from comes within one of the exceptions for interlocutory orders set forth in the supreme court rules (see 107 Ill.2d Rs. 306, 307, 308). It is well settled that dismissals granted without prejudice are not final and appealable orders. DeLuna v. Treister, 185 Ill.2d 565, 569, 236 Ill.Dec. 754, 708 N.E.2d 340 (1999); Flores v. Dugan, 91 Ill.2d 108, 114, 61 Ill.Dec. 783, 435 N.E.2d 480 (1982); Renzulli 176 Ill.App.3d at 662, 126 Ill.Dec. 116, 531 N.E.2d 411. The defendant here has appealed several matters that the trial court dismissed with leave to reinstate. These matters were not final and appealable, as they were dismissed without prejudice. Accordingly, we dismiss the defendant's appeals in case Nos. 02-OV-3221, 02-OV-3224, 02-OV-3225, and 02-OV-3226.
As to the remaining cases, the defendant's first contention on appeal is that the Village's noise ordinance is preempted by the Illinois Environmental Protection Act (Environmental Protection Act) (415 ILCS 5/1 et seq. (West 2002)). The defendant relies upon City of Des Plaines v. Chicago & North Western Ry. Co., 65 Ill.2d 1, 2 Ill.Dec. 266, 357 N.E.2d 433 (1976). In that case, the City of Des Plaines charged the North Western Railway Company with violating its local noise control ordinance. Chicago & North Western Ry. Co., 65 Ill.2d at 2-3, 2 Ill.Dec. 266, 357 N.E.2d 433. The alleged violations were based upon noise caused by North Western Railway's locomotives in their morning departure from the Des Plaines railroad yard. Chicago & North Western Ry. Co., 65 Ill.2d at 3, 2 Ill.Dec. 266, 357 N.E.2d 433. On appeal, the Illinois Supreme Court struck down the City of Des Plaines's noise control ordinance, holding that it was legislation in an area which did not pertain to the government and affairs of a home rule unit. Chicago & North Western Ry. Co., 65 Ill.2d at 7, 2 Ill.Dec. 266, 357 N.E.2d 433.
The Chicago & North Western Ry. Co. court reasoned:

*530 "While noise pollution may initially appear to be a matter of local concern, an analysis of the problem reveals that noise pollution is a matter requiring regional, if not statewide, standards and controls. * * * While certain categories of noise pollution may be confined within the boundaries of one municipality, such as an irate motorist sounding his horn, other categories are not so limited. A railroad yard or industrial district located on the boundary of one municipality will obviously affect other municipalities with noise pollution emissions. Of particular relevance is the question of noise emissions from trains in transit which may pass through numerous municipalities en route to their destination. During oral argument in the present case, counsel for Des Plaines acknowledged that the ordinance in question was designed to regulate unwanted noise emissions affecting Des Plaines residents whether or not the noise pollution originated within that municipality. Des Plaines, therefore, recognized * * * that control of unwanted noise emissions was not a matter of local concern." Chicago & North Western Ry. Co., 65 Ill.2d at 5, 2 Ill.Dec. 266, 357 N.E.2d 433.
While Chicago & North Western Ry. Co. is certainly instructive, it is not entirely on point. Unlike the City of Des Plaines, the Village is a not a home rule unit of government. Rather, it is a non-home-rule unit of government because it has less than 25,000 inhabitants and has not elected by referendum to become a home rule unit of government. Home rule and non-home-rule units of local government are subject to slightly different standards. Under article VII, section 6, of the Illinois Constitution, home rule units of local government may enact regulations when the state has not specifically declared its exercise to be exclusive.Ill. Const.1970 art. VII, § 6; T & S Signs, Inc. v. Village of Wadsworth, 261 Ill. App.3d 1080, 1090, 199 Ill.Dec. 467, 634 N.E.2d 306 (1994). On the other hand, non-home-rule units of local government are governed by Dillon's Rule. T & S Signs, 261 Ill.App.3d at 1090, 199 Ill.Dec. 467, 634 N.E.2d 306.
Under Dillon's Rule, non-home-rule units possess only those powers that are specifically conveyed by the Constitution or by statute. Commonwealth Edison Co. v. City of Warrenville, 288 Ill.App.3d 373, 380, 223 Ill.Dec. 732, 680 N.E.2d 465 (1997). Thus, a non-home-rule unit may regulate in a field occupied by state legislation when the Constitution or a statute specifically conveys such authority. Village of Wauconda v. Hutton 291 Ill. App.3d 1058, 1060, 226 Ill.Dec. 161, 684 N.E.2d 1364 (1997); T & S Signs, 261 Ill.App.3d at 1090, 199 Ill.Dec. 467, 634 N.E.2d 306. Nonetheless, even when conveyed the authority to regulate in a particular field, a non-home-rule unit cannot adopt an ordinance if it infringes upon the spirit of the state law or is repugnant to the general policy of this state. Hawthorne v. Village of Olympia Fields, 204 Ill.2d 243, 258-59, 274 Ill.Dec. 59, 790 N.E.2d 832 (2003).
With these principles in mind, we turn to the Environmental Protection Act, which regulates various types of pollution, including noise pollution. Section 23 of the Environmental Protection Act provides:
"[E]xcessive noise endangers physical and emotional health and well-being, interferes with legitimate business and recreational activities, increases construction costs, depresses property values, offends the senses, creates public nuisances, and in other respects reduces the quality of our environment." 415 ILCS 5/23 (West 2002). *531 Section 24 of the Environmental Protection Act further provides:
"No person shall emit beyond the boundaries of his property any noise that unreasonably interferes with the enjoyment of life or with any lawful business or activity, so as to violate any regulation or standard adopted by the Board under this Act." 415 ILCS 5/24 (West 2002).
Section 25 of the Environmental Protection Act grants the Illinois Pollution Control Board the authority to prescribe regulations on noise control. 415 ILCS 5/25 (West 2002). The Pollution Control Board has adopted several such regulations. See 35 Ill. Adm.Code § 900.101 et seq. (2002). Title 35, section 900.102, of the Illinois Administrative Code generally prohibits noise pollution. That section provides:
"No person shall cause or allow the emission of sound beyond the boundaries of his property, as property is defined in Section 25 of the Illinois Environmental Protection Act, so as to cause noise pollution in Illinois, or so as to violate any provision of this Chapter." 35 Ill. Adm.Code § 900.102 (2002).
The remaining regulations regulate noise emissions from property-line-noise sources (noise emitting equipment or facilities that are capable of emitting sound beyond the line of the property on which they are operated), motor vehicles, and snowmobiles. See 35 Ill. Adm.Code pts. 901, 902, 905 (2002).
However, while the Environmental Protection Act occupies the field of noise control, the Illinois Municipal Code (Municipal Code) gives municipalities the authority to regulate the same within their municipalities. Section 11-5-2 of the Municipal Code provides that "the corporate authorities of each municipality may prevent or suppress riots, routs, affrays, noises, disturbances, trespasses, and disorderly assemblies in any public or private place." 65 ILCS 5/11-5-2 (West 2002). Section 11-5-2 specifically grants municipal governments the authority to control noise.
Furthermore, section 11-60-2 of the Municipal Code provides that "the corporate authorities of each municipality may define, prevent, and abate nuisances." 65 ILCS 5/11-60-2 (West 2002). Under this broad grant of authority, a municipality can declare what constitutes a nuisance and pass ordinances to prevent and abate the nuisance. See Carpentersville v. Fiala, 98 Ill.App.3d 1005,1007, 54 Ill.Dec. 521, 425 N.E.2d 33 (1981). Historically, nuisance ordinances have been held to be invalid only when the municipality's determination of what constitutes a nuisance is clearly erroneous. See, e.g., Village of Riverwoods v. Untermyer, 54 Ill.App.3d 816, 822, 12 Ill.Dec. 371, 369 N.E.2d 1385 (1977); see also Dube v. City of Chicago, 7 Ill.2d 313, 324, 131 N.E.2d 9 (1955); People ex rel. Friend v. City of Chicago, 261 Ill. 16, 20,103 N.E. 609 (1913).
Pursuant to Dillon's Rule, sections 11-5-2 and 11-60-2 convey to the Village and other non-home-rule units the authority to pass ordinances controlling noise. Thus, the only question that remains is whether the Village's ordinance is in concert with the spirit of the laws and policies of this state. We hold that it is. The Village's noise control ordinance does not contradict any of the regulations promulgated by the Pollution Control Board. Furthermore, the Village's noise ordinance is not overreaching, as it purports to regulate only unwanted noise originating and disturbing others within the Village. Accordingly, we find that the Village's ordinance is not preempted by the Environmental Protection Act.
In so ruling, we find Chicago & North Western Ry. Co. to be distinguishable *532 from the present case. Unlike the ordinance at issue here, the ordinance adopted by the City of Des Plaines infringed upon the regulations of the Pollution Control Board and the policies of this state. One of the regulations adopted by the Pollution Control Board at that time limited noise emissions from railroad yards and further provided railroad yards a 12-month grace period to comply with its standards. Chicago & North Western Ry. Co., 65 Ill.2d at 3-4, 2 Ill.Dec. 266, 357 N.E.2d 433. It was during this grace period that the City of Des Plaines cited the North Western Railway Company. Chicago & North Western Ry. Co., 65 Ill.2d at 4, 2 Ill.Dec. 266, 357 N.E.2d 433. Furthermore, the unwanted noise emissions from the trains were not matters of local concern. Trains, by their very nature, are transient instruments of intrastate and interstate commerce. Finally, as acknowledged by counsel for the City of Des Plaines during oral argument, the ordinance was designed to limit noise emissions whether or not the noise originated within Des Plaines. Chicago & North Western Ry. Co., 65 Ill.2d at 5, 2 Ill.Dec. 266, 357 N.E.2d 433.
We additionally note that our ruling is consistent with that of the Illinois Appellate Court, Fifth District, in Village of Caseyville v. Cunningham, 137 Ill.App.3d 186, 91 Ill.Dec. 940, 484 N.E.2d 499 (1985). In that case, the Village of Caseyville cited Steven, Charles, and Mary Cunningham with violating its local nuisance ordinance. Cunningham, 137 Ill.App.3d at 187, 91 Ill.Dec. 940, 484 N.E.2d 499, The Cunninghams owned a truck and refrigerated semi tractor trailer. Cunningham, 137 Ill. App.3d at 187, 91 Ill.Dec. 940, 484 N.E.2d 499. When not in use, the Cunninghams parked the truck and trailer behind a building within the Village of Caseyville's limits. Cunningham, 137 Ill.App.3d at 187, 91 Ill.Dec. 940, 484 N.E.2d 499. They frequently left the refrigerating unit on the truck operating, which caused a disturbing noise. Cunningham, 137 Ill. App.3d at 187, 91 Ill.Dec. 940, 484 N.E.2d 499. On appeal, the Cunningham court upheld the noise ordinance, finding that municipal governments could control local noise. Cunningham, 137 Ill.App.3d at 189, 91 Ill.Dec. 940, 484 N.E.2d 499. The Cunningham court distinguished Chicago & North Western Ry Co., reasoning that not every noise problem is of statewide concern. Cunningham, 137 Ill.App.3d at 189, 91 Ill.Dec. 940, 484 N.E.2d 499. "We cannot find that loud mufflers, squealing tires or barking dogs are of such statewide concern. * * * If [the Village's] argument regarding preemption is accepted, each municipality would have no choice but to call in the Illinois Environmental Protection Agency to handle the most minor of nuisance problems." Cunningham, 137 Ill.App.3d at 189, 91 Ill.Dec. 940, 484 N.E.2d 499.
The defendant's next contention on appeal is that the trial court erred in refusing to admit a document into evidence. The defendant explains that this document was a letter to him from the Village granting him temporary permission to play music outdoors. He argues that this document was admissible under the business document exception to the hearsay rule.
We are unable to review the defendant's second contention. The defendant here neglected to make an offer of proof, and as such, the document that he urges us to review is not part of the record. It is well settled that an offer of proof must be tendered to preserve for review a question regarding the wrongful exclusion of evidence. Snelson v. Kamm, 204 Ill.2d 1, 23, 272 Ill.Dec. 610, 787 N.E.2d 796 (2003); People v. Armstrong, 183 Ill.2d 130, 155, 233 Ill.Dec. 252, 700 N.E.2d 960 (1998). Because the defendant did not make an *533 offer of proof, he has waived review of this issue.
The defendant's final contention on appeal is that his multiple convictions violate the one-act, one-crime doctrine. The defendant argues that the various citations he received on June 15, 2002, were all based on one act, causing loud music that disturbed others within the Village.
The one-act, one-crime doctrine, articulated in People v. King, 66 Ill.2d 551, 566, 6 Ill.Dec. 891, 363 N.E.2d 838 (1977), provides that multiple convictions are not proper where (1) only one physical act was manifested, or (2) multiple acts were manifested, but some of the convictions are of included offenses. In King, the supreme court held:
"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts." King, 66 Ill.2d at 566, 6 Ill.Dec. 891, 363 N.E.2d 838.
The one-act, one-crime doctrine requires a two-part analysis. A court must first determine whether a defendant's conduct consisted of separate acts or a single physical act. People v. Rodriguez, 169 Ill.2d 183, 186, 214 Ill.Dec. 451, 661 N.E.2d 305 (1996). An "act" is "`any overt or outward manifestation which will support a different offense.'" Rodriguez, 169 Ill.2d at 188, 214 Ill.Dec. 451, 661 N.E.2d 305, quoting King, 66 Ill.2d at 566, 6 Ill.Dec. 891, 363 N.E.2d 838. If only one physical act was undertaken, multiple convictions are improper.
If separate acts were undertaken, a court must then ask whether any of the offenses are included offenses. If so, multiple convictions are improper. Rodriguez, 169 Ill.2d at 186, 214 Ill.Dec. 451, 661 N.E.2d 305.
When only one conviction can stand under the one-act, one-crime doctrine, the rule is that the conviction of the more serious offense should stand. People v. Bussan, 306 Ill.App.3d 836, 839, 240 Ill.Dec. 133, 715 N.E.2d 820 (1999). Whether multiple convictions must be vacated under the one-act, one-crime doctrine is a question of law subject to de novo review. People v. Daniels, 187 Ill.2d 301, 307, 240 Ill.Dec. 668, 718 N.E.2d 149 (1999).
We believe that the defendant's multiple convictions of violating the Village's noise control ordinance on June 15, 2002, violated the one-act, one-crime doctrine. The defendant was convicted of violating the ordinance on June 15, 2002, at 8:39 p.m., 9 p.m., 10:10 p.m., and 10:16 p.m. These four convictions were based on the defendant causing an intermittent emission of loud music over a period of approximately an hour and a half. By the terms of the Village's ordinance, the defendant's convictions were based on the same physical act. The Village's noise ordinance provides that "each day such a violation is committed or permitted to continue constitutes a separate offense." Accordingly, pursuant to the Village's ordinance, the defendant's act of causing loud and disturbing noise over a intermittent period of an hour and a half on June 15, 2002, was one offense.
We find unpersuasive the Village's argument that each victim who was annoyed or disturbed by the defendant's music constituted an outward manifestation *534 that supported a separate offense. We are mindful of the principle that separate victims generally require separate convictions and sentences. See People v. Shum, 117 Ill.2d 317, 363, 111 Ill.Dec. 546, 512 N.E.2d 1183 (1987). However, looking again to the terms of the Village's ordinance, this principle is inapplicable. The Village's ordinance prohibits excessive noise that annoys or disturbs "others within the Village." The Village's ordinance contemplates that there will be multiple victims of one act of causing loud noise.
Moreover, noise pollution is not comparable to criminal acts such as murder, arson, and criminal damage to property, to which the Shum principle has been applied. See People v. Kuntu, 196 Ill.2d 105, 131, 256 Ill.Dec. 500, 752 N.E.2d 380 (2001) (a defendant was convicted of murder and arson for setting an apartment building on fire, killing one of the tenants); Shum, 117 Ill.2d at 363, 111 Ill.Dec. 546, 512 N.E.2d 1183 (a defendant was convicted of murder and feticide after firing a single shot that killed both woman and unborn baby); People v. Bustamante, 334 Ill.App.3d 515, 522, 268 Ill.Dec. 358, 778 N.E.2d 344 (2002) (a defendant was convicted of criminal damage to government property and reckless conduct for throwing a beer bottle at a parked car). Pollution, noise or otherwise, generally affects numerous victims at one time. However, that does not necessarily mean that each victim affected constitutes a separate act of pollution. As such, many statutes regulating pollution throughout the country are worded similarly to the Village's ordinance, defining a violation in terms of "per day." See, e.g., Colo. Rev. Stat. § 25-7-122 (2002); Haw. Rev. Stat. § 342F-14.5 (2002); Iowa Code § 455B.146 (2002); N.J. Rev. Stat. 58:10A-3 (2002); Okla. Stat. tit. 27A, § 2-6-206 (2002).
In conclusion, the defendant's four convictions in case Nos. 02-OV-3220, 02-OV-3222, 02-OV-3223, and 02-OV-3227 were based on the same physical act. As such, we vacate the defendant's convictions in case Nos. 02-OV-3222, 02-OV-3223, and 02-OV-3227.
For the foregoing reasons, this court, on its own motion, dismisses the defendant's appeal in case Nos. 02-OV-3221, 02-OV-3224, 02-OV-3225, and 02-OV-3226. The defendant's convictions in case Nos. 2-OV-3222, 02-OV-3223, and 02-OV-3227 are vacated. The defendant's convictions in case Nos. 02-OV-3219 and 02-OV-3220 are affirmed.
Nos. 2-03-0220, 2-03-0223, 2-03-0224, and 2-03-0272, Dismissed.
Nos. 2-03-0221, 2-03-0222, and 2-03-0225, Vacated.
Nos. 2-03-0218 and 2-03-0219, Affirmed.
BOWMAN and HUTCHINSON, JJ., concur.